AEE

FILED
FEBRUARY 14, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| NICOLAS BALAGIANNIS and <br> RESERVE HOTELS PTY LIMITED <br> As trustee for the NBF TRUST <br><br> Plaintiffs, <br> v. <br><br> THEODORE MAVRAKIS and <br> COSTAS MAVRAKIS <br> Defendants. | No. <br><br> **08 C 943** <br><br> **JUDGE LEINENWEBER** <br> **MAGISTRATE JUDGE BROWN** |

## COMPLAINT

Plaintiffs Nicolas Balagiannis ("Mr. Balagiannis") and Reserve Hotels Pty Limited as trustee for the NBF Trust ("Reserve"), by their undersigned attorneys, complains of Defendants Theodore Mavrakis ("Ted Mavrakis") and Costas Mavrakis as follows:

### Parties

1. Mr. Balagiannis is an individual who currently resides in Australia, is a citizen of Australia and is the sole director of Reserve.

2. Reserve is a company organized under the laws of Australia.

3. Ted Mavrakis is an individual who currently resides in 36 Park Lane, Golf, Illinois, 60029 and is a citizen of Illinois.

4. Costas Mavrakis is an individual who currently resides in Patras, Greece and is a citizen of Illinois.

### Jurisdiction and Venue

5. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(2) in that it is a dispute between citizens of the state of Illinois and citizens of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

1

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) in that Ted Mavrakis resides in this district and a substantial portion of the events giving rise to this claim took place in this district.

7. This Court has personal jurisdiction over Costas Mavrakis pursuant to 735 ILCS 5/2-209(a)(7), in that the contracts and promises referred to in this complaint are substantially connected to Illinois and pursuant to 735 ILCS 5/2-209(c), in that Costas Mavrakis has sufficient minimum contacts with the State of Illinois to justify this Court exercising personal jurisdiction over him.

**General Allegations**

8. In 2003 Ted Mavrakis, and his brother Costas Mavrakis, each held equity interests in Theros Gaming International, Inc., an Illinois corporation ("Theros"). The main asset of Theros was a casino located in Greece.

9. At that time there was litigation pending regarding Theros, the interest held in that company by Ted and Costas Mavrakis and a third party's claim that he had a right to purchase a portion of the stock of Theros.

10. In 2003, Ted Mavrakis had allegedly agreed to sell his interest in Theros to that third party for approximately $9,000,000, $4,000,000 of which was to be paid in cash at closing and the remaining $5,000,000 was to be paid pursuant to a note. Costas Mavrakis had asserted that, pursuant to the Theros shareholder agreement, he had a right of first refusal with regard to the stock that Ted Mavrakis was selling.

11. In order to comply with his obligations under that right of first refusal, Costas Mavrakis was required to tender to Ted Mavrakis in payment for Ted Mavrakis's stock (1) $4 million in cash; (2) a promissory note payable to Ted Mavrakis in the amount of $5 million (the

"Promissory Note"); and (3) a release from Mike Rose, another shareholder in Theros, of any claims against Ted Mavrakis (the "Release"). Upon receipt of that consideration, Ted Mavrakis was then to transfer his stock in Theros to Costas Mavrakis.

12. The closing was to take place in Chicago, Illinois through an escrow held by Chicago Title & Trust Company in Chicago, Illinois. The terms of the escrow were that Costas Mavrakis would deposit the $4 million in cash, the Promissory Note and the Release in the escrow and Ted Mavrakis would deposit his shares of Theros in the escrow.[1] When all required items had been deposited, then the escrow agent would distribute the stock to Costas Mavrakis and the cash, note and release to Ted Mavrakis.

13. Costas Mavrakis apparently did not have the $4 million available to deposit in the escrow and so Costas Mavrakis entered in to the following agreement with Mr. Balagiannis, who was acting on behalf of Reserve: (1) Mr. Balagiannis would advance to Costas Mavrakis $4 million to close the transaction with Ted Mavrakis and would loan Costas Mavrakis $500,000 to cover legal costs to date; (2) Costas Mavrakis would, after closing with Ted Mavrakis, sell to Mr. Balagiannis approximately one-third of the stock in Theros; and (3) the $4 million advance would be applied against the purchase price Mr. Balagiannis was to pay for that one-third interest and the $500,000 loan would be repaid in 2006 (the "Stock Purchase and Loan Agreement"). A copy of that agreement and a translation is attached hereto as Collective Exhibit A.

14. Pursuant to that agreement, by wire transfers beginning on June 6, 2003 and ending on September 1, 2003, Mr. Balagiannis and Reserve wired over $800,000 to Costas Mavrakis and $3.7 million directly to the escrow. Rather than depositing the $300,000 in the escrow with Ted Mavrakis, Costas Mavrakis apparently used the entire $800,000 to pay personal expenses, rather

---

[1] The escrow actually refers to Ted Mavrakis depositing the release in the escrow, but that appears to be a typographical error.

than depositing that amount in the escrow or using it to pay legal fees as he had agreed. However, Costas has stated under oath that he provided the additional $300,000 to Ted Mavrakis by check.

15.     At that time, Ted Mavrakis knew that Mr. Balagiannis had advanced the money to Costas Mavrakis, a portion of which was deposited in the escrow as part of a transaction pursuant to which Mr. Balagiannis was going to acquire an interest in Theros.

16.     In fact, on about October 22, 2003 Ted Mavrakis sent a letter (the "Guaranty") to Costas Grekos, an attorney working on behalf of Mr. Balagiannis, in which Ted Mavrakis personally guaranteed that Mr. Balagiannis's $4 million loan to Costas Mavrakis "would not be jeopardized" and that if Mr. Balagiannis changed his mind, Ted Mavrakis would purchase his rights at the same price.  A copy of that Guaranty and the translation is attached hereto as Collective Exhibit B.

17.     Ultimately, Costas Mavrakis did not deposit the Promissory Note or the Release in escrow and Ted Mavrakis did not deposit the stock.

18.     In late October, 2003, the Costas Mavrakis and Ted Mavrakis terminated the escrow, and even though Ted Mavrakis had not transferred the stock to Costas Mavrakis and even though Costas Mavrakis and Ted Mavrakis both knew that the money in the escrow was the proceeds of a loan from Mr. Balagiannis to Costas Mavrakis to finance the purchase of Ted Mavrakis's stock, the money in the escrow was transferred by Costas Mavrakis and Ted Mavrakis to an account for Ted Mavrakis located in Greece.

19.     Since that time both Costas Mavrakis and Ted Mavrakis have told Mr. Balagiannis that this money is being held as earnest money to insure that Costas Mavrakis does not waive his right to purchase the stock from Ted Mavrakis pursuant to his right of first refusal.  Costas

Mavrakis and Ted Mavrakis have continued to make these representations to Mr. Balagiannis through 2007, even though Ted Mavrakis's stock was sold to a third party in 2004.

20. On March 31, 2007, Ted Mavrakis asserted that he continued to hold the $3,700,000 as a deposit on the purchase of his stock and that he would go through with that sale if the sale to the third party was ever cancelled. A copy of that letter and the translation is attached hereto as Collective Exhibit C.

21. More recently, Ted Mavrakis now contends that he does not have possession of the $3,700,000, that upon receiving those funds in October of 2003 he immediately transferred them to Costas Mavrakis and that he has no obligation to return that amount to Mr. Balagiannis.

## COUNT I
### (Breach of Contract-Costas Mavrakis)

22  Mr. Balagiannis and Reserve hereby incorporates by reference paragraphs 1 through 21 of this complaint as if fully set forth herein.

23  Pursuant the Stock Purchase and Loan Agreement Costas Mavrakis was obligated to either deliver to Mr. Balagiannis 34% of the stock in Theros or return the $4,000,000 deposit made by Mr. Balagiannis. In addition, Costas Mavrakis was obligated under that agreement to repay the $500,000 loan made by Mr. Balagiannis.

24  Mr. Balagiannis has demanded that Costas Mavrakis return the $4,500,000, but Costas Mavrakis has failed to return those funds.

25  Costas Mavrakis has breached those obligations, in that he has not delivered the stock, he has not returned the deposit and he has not repaid the $500,000 loan.

26  As a direct and proximate result of that breach by Costas Mavrakis, Mr. Balagiannis and Reserve have suffered damages in the amount of $4,500,000.

27    Mr. Balagiannis has performed all of his obligations under the Stock Purchase and Loan Agreement, other than those obligations excused by Costas Mavrakis's breach of his obligations.

WHEREFORE, Mr. Balagiannis and Reserve hereby request that this court enter judgment in his favor and against Costas Mavrakis in the amount of $4,500,000 plus costs, interest and such other relief as this court deems just.

### COUNT II
### (Breach of Guaranty-Ted Mavrakis)

28    Mr. Balagiannis and Reserve hereby incorporates by reference paragraphs 1 through 27of this complaint as if fully set forth herein.

29    Pursuant to the Guaranty, Ted Mavrakis agreed that he would guarantee the $4 million advanced to Costas Mavrakis by Mr. Balagiannis and Reserve and that if requested he would purchase Mr. Balagiannis/Reserves rights for $4 million.

30.    By letter dated June 20, 2007, Mr. Balagiannis demanded that Ted Mavrakis and/or Costas Mavrakis return the $4 million advance.  Costas Mavrakis did not return the funds and, in breach of his obligations under the Guaranty, Ted Mavrakis also failed to pay that amount to Mr. Balagiannis.

31.    As direct and proximate result of Ted Mavrakis's breach of his obligations under the Guaranty, Mr. Balagiannis and Reserve have suffered damages in the amount of $4 million.

32.    Mr. Balagiannis and Reserve has performed all of his obligations under the Guaranty.

WHEREFORE, Mr. Balagiannis and Reserve hereby request that this court enter judgment in his favor and against Ted Mavrakis in the amount of $4,000,000 plus costs, interest and such other relief as this court deems just.

## COUNT III
### (Promissory Estoppel)

33. Mr. Balagiannis and Reserve hereby incorporates by reference paragraphs 1 through 32 of this complaint as if fully set forth herein.

34. On March 31, 2007, Ted Mavrakis represented that he held the $3.7 million withdrawn from the escrow and promised to that amount to Mr. Balagiannis if Mr. Balagiannis elected not to go through with his stock purchase transaction with Costas Mavrakis.

35. Ted Mavrakis made that promise intending that Mr. Balagiannis and Reserve would rely on that promise and would not pursue recovery of the $3.7 million at that time.

36. Mr. Balagiannis and Reserve in fact reasonably relied on Ted Mavrakis's promise to return the funds and did not institute proceedings to recover the funds.

37. Ted Mavrakis has breached his agreement to return the $3.7 million dollars to Mr. Balagiannis or Reserve.

38. As a direct result of Ted Mavrakis's breach of his promise, Mr. Balagiannis and Reserve have suffered damages in the amount of $3.7 million.

WHEREFORE, Mr. Balagiannis and Reserve hereby requests that this court enter judgment in his favor and against Ted Mavrakis in the amount of $3,700,000 plus costs, interest and such other relief as this court deems just.

## COUNT IV
### (Fraud)

39. Mr. Balagiannis and Reserve hereby incorporates by reference paragraphs 1 through 38 of this complaint as if fully set forth herein.

40. Ted Mavrakis, and Costas Mavrakis, repeatedly represented to Mr. Balagiannis, during the period October, 2003 through March 31, 2007, that the $3.7 million withdrawn from the

escrow was being held as a deposit against the future purchase of stock in Theros owned by Ted Mavrakis.

41. In addition Costas Mavrakis falsely represented that the $4,500,000 advanced by Mr. Balagiannis and Reserve would be used only to fund the escrow and to pay legal fees.

42. Those representations set forth in paragraphs 40 and 41 were false and Costas Mavrakis and Ted Mavrakis knew they were false at the time they were made and knew that the funds were not (a) being held as a deposit, but instead had spent by Costas Mavrakis and/or Ted Mavrakis and (b) that a portion of the funds were used for purposes other than funding the escrow and paying legal fees..

43. Costas Mavrakis and Ted Mavrakis intended that Mr. Balagiannis and Reserve rely on these false representations of Costas Mavrakis and Ted Mavrakis, so that he would not prevent Ted Mavrakis from withdrawing the $3.7 million from the escrow and would not seek to recover the $3.7 million immediately upon its being withdrawn from the escrow, even thought the sale of Ted Mavrakis's stock in Theros to Costas Mavrakis had not closed.

44. Mr. Balagiannis in fact reasonably relied on the false representations of Ted Mavrakis and Costas Mavrakis by, among other things, delaying pursuit of the recovery of those funds until now.

45. Mr. Balagiannis has demanded that Costas Mavrakis and/or Ted Mavrakis return the funds that were taken from the escrow, but they have failed to do so.

46. As a direct result of Mr. Balagiannis's reasonable reliance on the false representations made by Costas Mavrakis and Ted Mavrakis, Mr. Balagiannis and Reserve have suffered damages in the amount of $3.7 million.

WHEREFORE, Mr. Balagiannis and Reserve hereby request that this court enter judgment in his favor and against Costas Mavrakis and Ted Mavrakis in the amount equal to:

A. $4,500,000 in compensatory damages;

B. $2,000,000 in punitive damages;

C. Mr. Balagiannis's costs incurred in this matter;

D. Prejudgment interest; and

E. Such other relief as this court deems just.

> Respectfully submitted,
> NICOLAS BALAGIANNIS and
> RESERVE HOTELS PTY LIMITED
> As trustee for the NBF TRUST
>
> By:  /S/ John M. Heaphy
>       One of their Attorneys

John M. Heaphy
George N. Vurdelja, Jr.
Harrison & Held
333 W. Wacker Drive, Suite 1700
Chicago, IL  60606
(312) 753-6160