**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLAS BALAGIANNIS and ) | | |
| RESERVE HOTELS PTY LIMITED ) | | |
| As trustee for the NBF TRUST ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | Case No. 08 C 943 | |
| ) | | |
| THEODORE MAVRAKIS ) | Hon. District Judge Leinenweber | |
| ) | | |
| ) | Hon. Magistrate Judge Brown | |
| Defendant. ) | | |
| ) | | |

**MEMORANDUM IN SUPPORT OF DEFENDANT THEODORE MAVRAKIS' MOTION
TO DISMISS COUNTS II, III AND IV OF PLAINTIFF'S COMPLAINT**

**I.   INTRODUCTION**

Plaintiffs basically allege that in 2003 Nicolas Balagiannis ("Balagiannis") and Costas Mavrakis ("Costas") entered into an agreement under which Balagiannis gave Costas cash to purchase stock from Costas' brother, Theodore Mavrakis ("Ted"). Under the agreement, Costas would then transfer some of the purchased stock to Balagiannis. At first, events went according to plan. Ted and Costas established an escrow to hold Costas' down payment for the stock, but the escrow was terminated in late October, 2003 and Costas and/or Ted (the Complaint is not clear) kept the money. In March, 2007, Ted sent a letter to Costas, stating that Ted was still willing to allow Costas to purchase the shares, but that if Costas wanted his deposit back, he should send a letter to Ted requesting it. To date, Balagiannis has received neither the shares nor repayment of the funds he gave to Costas.

This case originally included a breach of contract claim (among others) against Costas, but Costas has been voluntarily dismissed. Thus, the Complaint is now solely an attempt to hold

Ted liable for the amount Balagiannis gave to Costas. Balagiannis has advanced three theories. Count II alleges that Ted agreed to guarantee repayment of the funds Balagiannis gave to Costas. However, as discussed below, (i) the document relied upon by Balagiannis is not a guarantee, and is certainly is not a guarantee of repayment of funds given by Balagiannis, (ii) there was no consideration for the alleged guarantee, and (iii) even if there was a guarantee, it was a guarantee of collection and not of payment, and therefore Balagiannis must obtain and enforce a judgment against Costas before bringing suit against Ted.

Balagiannis' second and third theories are promissory estoppel and fraud. Both theories are based on alleged promises by Ted and Costas to repay the amount given by Balagiannis to Costas, with the promissory estoppel claim being entirely based on the March, 2001 letter. However, the letter does not make that (or any other) promise to Balagiannis. On the contrary, the letter states that Ted would give the deposit to Costas if Costas provided notice that he no longer wanted the stock.

In addition, the Complaint must be dismissed because Costas would, because of the nature of this case, be an indispensable party. It should be dismissed with prejudice, because if Costas were restored as a party, the Court would lose jurisdiction.

## II.   STANDARD OF REVIEW

   A.   "Notice" Pleading under Fed. R. Civ. P. 8 (Counts II and III)

A district court may grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) if it is clear that no relief can be afforded to a plaintiff based on the allegations set forth in the complaint. *See Evans v. Lederle Lab*, 167 F.3d 1106, 1107 (7th Cir.). Nevertheless, the court need not accept inferences unsupported by factual allegations in the complaint or legal conclusions set forth by the plaintiff. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir.

2000).  Dismissal is appropriate when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

  B.  <u>Heightened Pleading Standard under Fed. R. Civ. P. 9 (Count IV)</u>

  Rule 9(b) provides, in relevant part, that "in all averments of fraud …the circumstances constituting fraud…shall be stated with particularity."  Fed. R. Civ. P. 9(b).  This heightened pleading standard requires parties alleging fraud to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992); see also *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

## III. RELEVANT ALLEGATIONS OF THE COMPLAINT

  The Complaint alleges that Ted and his brother Costas each owned equity interests in Theros International Gaming, Inc. ("Theros") in 2003.  Compl., ¶8.  The primary corporate purpose of Theros was the "acquisition of the license for the incorporation, operation and utilization" of casinos in Greece.  Compl., Ex. A, ¶1.1.[1]  Costas and Balagiannis entered into a "Preliminary Agreement of Extra-Corporate Agreement for the Sale of Stock Shares not Listed in the Stock Market" (the "Preliminary Agreement") in Athens, Greece in June, 2003. The Preliminary Agreement stated that Ted had agreed to sell Ted's shares in Theros to a fourth party named Kostas Piladakis ("Piladakis").  Compl., Ex. A at ¶ 1.3.  However, Costas had a

---

[1] When a document is referred to in a complaint and forms the basis of the claims, as is true of Plaintiffs' claims here, the document constructively becomes a part of the pleading and is cognizable on a motion to dismiss.  *See* Fed. R. Civ. P. 10(c); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.")

"preemptive right" to purchase the shares Ted was to sell to Piladakis, and Costas had declared his intention to exercise that right. *Id*. In order to exercise the preemptive right, however, Costas was required to pay certain amounts to Ted, totaling $9.5 million. *Id*. at ¶ 6. Balagiannis would pay Costas $500,000 upon signing the Preliminary Agreement, which would be secured by a personal check from Costas. *Id.* at ¶ 7. Costas would then deliver certain documents concerning Theros to Balagiannis, and that the parties would then enter into a "final agreement." *Id*. at ¶ 7. After the final agreement was signed, Balagiannis would pay Costas an additional $4 million, which would then be deposited into an escrow for the purpose of paying the down payment of the purchase price of Ted's Theros shares. *Id*. at ¶ 8. Costas would then transfer shares to Balagiannis. *Id*. at ¶ 8.  Costas pledged shares in a company known as "Three Stars" to Balagiannis and gave a check as security for Costas' promise to transfer the shares when the sale occurred. *See* Compl., Ex. A, ¶ 20.

The Complaint alleges that Costas and Ted established an escrow and Balagiannis wired $3.7 million to the escrow. Compl. ¶¶ 12, 14. Costas also allegedly gave Ted $300,000 of other funds Balagiannis had sent to Costas. *Id*. at ¶ 14.

On October 22, 2003, Ted allegedly wrote letter to Balagiannis stating that Balagiannis' funds "shall not be at risk in any case" and offering to purchase Balagiannis' rights to the shares. Compl., Ex. C.[2]

In "late October," 2003, the escrow terminated and the funds were allegedly wired to Ted's account in Greece. *See* Compl., ¶ 18. Roughly four years later Ted sent a letter to Costas (with a copy to Balagiannis) (Compl., Ex. C) in which Ted stated to Costas that Ted would

---

[2] Plaintiff attaches this correspondence as Exhibit B to the Complaint but cites the following quotation from the letter: Ted's statement that Plaintiff's funds "would not be jeopardized." (See Compl., ¶16). If disparities exist between the exhibit and the allegations, the exhibit controls. *Kunze v. First Chicago Corp. (In re First Chicago Corp. Sec. Litig.)*, 769 F.Supp. 1444, 1450 (N.D.Ill.1991); 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1327 (2d ed. 1990).

return the funds to Costas upon his receipt of a written verification that Costas was abandoning his right to purchase the Theros stock. *Id.*

## IV.     ARGUMENT

### A.     Count II Must be Dismissed Because the Language Relied upon by Balagiannis is not a Guaranty

The language relied upon by Balagiannis, contained in the October, 2003 letter from Ted to Balagiannis is simply not a guaranty. Plaintiffs' translated version reads as follows[3]:

> I hereby affirm that your funds (USD 4,000,000) shall not be at risk in any case. As the seller of the stock shares, I am also giving you my personal guarantee. On the other hand, if you change your mind, for any reason, I will gladly purchase myself, your rights at the same consideration.

(*See* Compl., Ex. B). Contrary to Paragraph 29 of the Complaint, this letter is not a guaranty that Costas would fulfill an obligation to repay $4 million to Balagiannis. The Preliminary Agreement does not require Costas to return any amount to Balagiannis.[4] Count II must be dismissed because Ted could not have guaranteed an obligation that did not exist.

Read as a whole, the October 22, 2003 letter is simply an acknowledgment that the funds given by Balagiannis to Costas will be applied to the purchase if Costas exercises the right to purchase Ted's shares. This is clear because the "guarantee" is given as the "seller of the stock shares," and not as a holder of funds. However, if there was any doubt about the meaning of Ted's alleged promise, it would have to be construed against Balagiannis. *See Emrick v. First National Bank of Jonesboro*, 324 Ill. App.3d 1109, 1114 (5th Dist. 2001) ("If there are any doubts relative to the language of a guaranty, those doubts must be resolved in favor to the

---

[3] Ted will contest both the accuracy of the translation and his signature, if this case proceeds.

[4] The Preliminary Agreement is nothing more than an unenforceable agreement to agree. Section 23 states, in part, "The present contract shall constitute the basis for the final agreement, which is to be signed in the future or a company of the selection of Nicolas Balagiannis; additions or supplements may be made by unanimous agreement."

guarantor. . . Additionally, the guarantor's undertaking must be strictly construed, and his or her liability cannot be varied or extended beyond the precise terms of the guarantee." (citations omitted)).[5] See also *Lincoln Park Federal Savings and Loan Association v. Carrane,* 192 Ill. App.3d 188, 191 (1st Dist. 1989) ("the liability of a guarantor is strictly construed in his favor and against the party in whose favor the guarantee runs. . . a guarantor is to be accorded the benefit of any doubt which may arise from the language of the guarantee."). The meaning of the October 22, 2003 letter is unambiguous, but if the Court finds any uncertainties it should resolve them in Ted's favor.

  B. Count II Must be Dismissed Because Balagiannis has Failed to Allege Consideration.

In this case, the underlying "contract" between Costas and Balagiannis is alleged to have been signed on June 9, 2003. However, Ted's letter, the purported guaranty, is not alleged to have been sent until October 22, 2003. Courts have held that where a guaranty is executed after the document containing the principal obligation, new consideration is necessary to support the guaranty. *See City National Bank of Hoopeston v. Russell,* 246 Ill. App.3d 302, 308 (4th Dist. 1993)("[W]here the guarantee is executed *after* the guaranteed debt is incurred, new consideration is necessary to support the guarantee" (emphasis in original)); *see also Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.,* 371 Ill. App.3d 1019, 1029 (1st Dist. 2007) ("[T]here had to be some exchange of consideration between the parties that modified the terms of the original loan agreement to make the guaranty enforceable.")

Plaintiffs do not allege any additional consideration in the General Allegations of the Complaint or in Count II. The only potential consideration mentioned anywhere in the

---

[5] Ted assumes that Plaintiff is pleading Illinois law causes of action. However, if this matter proceeds further, Ted reserves his right to take the position that the law of Greece, or another jurisdiction, should be applied.

169681.6      6

complaint is that Balagiannis did not "institute proceedings to recover the funds." Compl., ¶36. However, courts have held that forbearance is only sufficient consideration for a guarantee if it is specifically bargained for in exchange for the guarantee. *See Hoopeston*, 246 Ill. App. 3d at 307 (stating "the mere fact that the creditor eventually did forbear is not consideration [for a guaranty] unless the forbearance was pursuant to an agreement between the parties for such forbearance," and reversing a trial court's finding that a guaranty was enforceable)

    C.    <u>Count II Must Also be Dismissed because Ted is, at most, a Guarantor of Collection, not of Payment.</u>

Courts construing Illinois law distinguish between two types of guarantees; guarantees of payment (sometimes called "absolute" guarantees) and guarantees of collection. If payment is guaranteed, the guarantor promises to pay the instrument if not paid when due without resort by the holder to any other party. *Floor v. Melvin,* 5 Ill. App.3d 463, 464-5 (3d Dist. 1972). If collection is guaranteed, however, the guarantor is only liable after the holder has reduced his claim against the maker to judgment, and execution has been returned unsatisfied. *Id.* In *Floor*, the guaranty stated "we irrevocably guaranty [plaintiff] against loss by reason of non-payment of this note." *Id*. at 464. The court found this language to be a guarantee of collection only, and therefore upheld the dismissal of the case on the grounds that the plaintiff had not prosecuted collection from the maker of the note.

In the present case Ted has, under Plaintiff's theory, guaranteed that Balagiannis' funds would not be "at risk." (*See* Compl., Ex. B.). This promise is indistinguishable from the guarantee against "loss" in *Floor*. Thus, at most, Ted has only guaranteed the collection of the

169681.6       7

obligation allegedly owed by Costas to Balagiannis. Since Balagiannis is not even pursuing a judgment against Costas,[6] Count II must be dismissed.

### D. Count III (Promissory Estoppel) is based on a Mischaracterization of the March 2007 Letter from Ted to Costas

The heart of Count III is Balagiannis' allegation, based on a March 31, 2007 letter, in which Ted allegedly "promised . . . $3.7 million . . . to Balagiannis if Mr. Balagiannis elected not to go through with his stock purchase transaction with Costas Mavrakis." Compl. at ¶ 34. The letter itself, however, says nothing of the kind.[7] It is a letter from Ted to Costas, and states that Ted will return Costas' funds *to Costas*, if Costas notifies Ted in writing that Costas does not wish to consummate the stock purchase. Compl. Ex. C. The letter indicates that a copy has been sent to Balagiannis, but makes no promise to Balagiannis. *Id.*

The elements of promissory estoppel are that "(1) the defendants made an unambiguous promise to plaintiff (2) plaintiff relied on that promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Dumas v. Infinity Broad. Corp.,* 416 F.3d 671, 677 (7th Cir. 2005) (*emphasis added*); quoting *Quake Constr., Inc. v. Am. Airlines, Inc.,* 141 Ill.2d 281, 309-10 (1990); *see also Geva v. Leo Burnett Co.,* 931 F.2d 1220, 1223 (7th Cir. 1991); *Demos v. National Bank of Greece,* 209 Ill.App.3d 655, 662 (1st Dist. 1991) (promise must be definite). In this case, no promise was made to Balagiannis or Reserve Hotel Pty Limited ("Reserve")[8] and payment, if any, was to be to Costas, not Balagiannis. Thus, Plaintiffs cannot meet the first element.

---

[6] Plaintiff's claims against Costas, including a breach of contract claim, were voluntarily dismissed on April 30, 2008.

[7] A translation attached as Exhibit C to the Complaint. Ted assumes that the translation is correct only for purposes of this Motion to Dismiss.

[8] Reserve is a named Plaintiff but is not mentioned in any of the allegedly operative documents.

E.     <u>Count III must also be dismissed because Plaintiffs Could not have Relied upon Ted's Alleged Promise</u>

None of the other three requirements of a claim for promissory estoppel can be met. The March 31 letter demonstrates that (i) that Ted did not make any promises on which Plaintiffs could have relied; (ii) Ted could not have reasonably foreseen any such reliance and (iii) Plaintiff could not have suffered damage, even if they had taken Ted's statements at face value. For each of these reasons, Count III must be dismissed.

Plaintiffs allege that they relied on Ted's promise in that they "did not institute proceedings to recover the funds." Compl., ¶36. But if Plaintiffs held off filing suit, it must have been on some basis other than the letter, since the letter only states that funds will be transferred to Costas, and states that this will only occur if Costas sends a written notice to Ted. Even if Plaintiffs held off filing suit to recover the funds, their reliance would have to be "reasonable or foreseeable." *See Ogdon v. Hoyt*, 409 F.Supp.2d 982, 990 (N.D.Ill., 2006); citing *Geva,* 931 F.2d at 1223 (plaintiff's reliance must be reasonable and justifiable). Ted could not have believed that Plaintiffs would rely on a letter in which Ted promised, at most, to make a payment to Costas. *See Hoyt*, 409 F. Supp.2d at 990; citing *Caterpillar, Inc. v. Usinor Industeel,* 393 F.Supp.2d 659, 682 (N.D.Ill.2005) (reliance must be related to the substance of the alleged promise).

F.     <u>Plaintiff's Fraud Claim Is Insufficient under Fed. R. Civ. P. 9</u>

Plaintiffs allege one sweeping fraud allegation against Ted in Paragraph 40 of the Complaint: "Ted Mavrakis, and Costas Mavrakis, repeatedly represented to Mr. Balagiannis, during the period October 2003 through March 31, 2007, that the $3.7 million withdrawn from the escrow was being held as a deposit against the future purchase of stock in Theros owned by Ted Mavrakis." Compl., ¶40. Contrary to the pleading requirements set out above, Plaintiffs

only make conclusory allegations that "Costas Mavrakis and Ted Mavrakis" knew that certain unidentified statements were false and intended to induce inaction by Balagiannis and the Trust. Compl., ¶¶42, 43.

"A complaint does not satisfy Rule 9(b) if it makes blanket allegations that fail to specifically identify the defendants who made each misrepresentation or omission." *In re VMS Securities Litigation,* 752 F.Supp. 1373, 1391 (N.D.Ill. 1990); *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990) (complaint may not "lump all the defendants together" and fail to specify "who was involved in what activity"). Plaintiffs allege that both Ted and Costas assured Balagiannis the cash was being held as a deposit but do not acknowledge which brother made the statements, when they made the statements or to whom they communicated the statements. This allegation does not meet the standard of Rule 9(b).

      G.    The Complaint Demonstrates that Plaintiffs Could Not have Relied upon Ted's Alleged Statements

A party pleading fraud must allege facts sufficient to establish its reliance on the alleged misrepresentations. *Bachman v. Bear, Stearns & Co., Inc.*, 57 F.Supp.2d 556, 563 (N.D.Ill., 1999) (Dismissing fraud claim on a motion to dismiss after finding the plaintiff did not rely on the alleged misrepresentations and explaining that "but for" causation "is not proximate causation or reliance, which is also required."); citing *Barille v. Sears Roebuck and Co.,* 289 Ill.App.3d 171, 176 (1st Dist.1997). The only reliance on the Mavrakis' representations that Plaintiffs allege is a delay in "pursuit of the recovery of the funds until now." Compl., ¶44. Plaintiffs never allege that their prospects of recovery have been adversely affected by the delay or even segregate what damage the delay may have caused them: they ask for the $3.7 million as damages for the "fraud." Compl., ¶46.

But more importantly, even if the mere delay in filing suit could be detrimental reliance, the Complaint negates the possibility that such reliance could have been reasonable. Plaintiffs allege that "Costas and Ted" made false representations during a period which included March 31, 2007 (Compl., ¶40), that "Costas and Ted" intended that Plaintiffs rely on the representations (Compl., ¶43), and that Balagiannis (but not Reserve) in fact relied on the representations. Compl., ¶ 44. However, the Complaint states that on March 31, 2007, Ted wrote to Costas that if Costas sent a notice, funds would be paid to Costas. *See* Compl. Ex. C. Balagiannis therefore knew that (i) any payment would be to Costas, and (ii) Costas would not be paid unless Costas sent a notice. The March 31, 2007 letter clarified that Ted did not believe that he owed any funds to Balagiannis, and had no intention of paying Balagiannis. If Balagiannis believed he was owed funds held by Ted, it could not have been reasonable him to delay litigation, given this unequivocal statement by Ted.

The reasonableness of a party's reliance "can be determined as a matter of law when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.,* 250 F.3d 570, 574 (7th Cir.2001). In this case, it is obvious that if Plaintiffs delayed enforcing any rights they had against Costas under the Preliminary Agreement, it was for some reason other than the statements they allege Ted made.

### H. All of the Claims Should Be Dismissed Because Plaintiff Recently Dismissed an Indispensable Party

#### 1. Costas is an Indispensable Party

Rule 19(a) requires joinder when the presence of the party to be joined is essential to the litigants' complete relief, or when the party to be joined must be present to protect its own or another party's interests. Fed. R. Civ. P. 19(a). If a party should be joined under Rule 19(a), but

joinder would deprive the court of subject matter jurisdiction, the court must then determine whether the action can proceed between the existing parties "in equity and good conscience" in accord with the provisions of Rule 19(b). *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). Factors considered by courts evaluating indispensability under Fed. R. Civ. P. 19(b) include the following:

> Whether there is potential prejudice to the party to be joined or to the litigants; whether the court can fashion a judgment to avoid such prejudice; whether the court can enter an adequate judgment without the absent party; and whether dismissal of the actions would deprive the plaintiff of an adequate remedy.

*Boulevard Bank Nat. Ass'n v. Philips Medical Systems Intern. B.V.*, 15 F.3d 1419, 1423 (7th Cir.1994). If a court concludes that the non-diverse party is "indispensable," however, the entire action must be dismissed. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 125 n. 22 (1968). Rule 19 requires a pragmatic consideration of the facts of each particular case to determine whether parties are indispensable. *Bio-Analytical Services, Inc. v. Edgewater Hospital, Inc.,* 565 F.2d 450, 452 (7th Cir.1977).

Ted and Costas face severe prejudice if Costas is not made a party to this dispute. Courts have often denied the motions of absolute guarantor defendants to join borrowers as indispensable parties on the ground that the guarantor agreed to face creditor lawsuits themselves, regardless of the creditors' inclusion or exclusion of the borrowers.[9] However, this case does not involve an absolute guaranty, and involves a special circumstance insofar as Costas may also have a claim to the funds claimed by Balagiannis. If Costas is not a party to this case, there are two risks. First, that Costas' rights to the funds allegedly held by Ted will be adjudicated in his absence, prejudicing him. Second, that in a subsequent action Ted might be

---

[9] See, *e.g.*, *Boulevard Bank Nat. Ass'n v. Philips Medical Systems Intern. B.V.*, 15 F.3d 1419 (7th Cir.1994); *UAL, Inc. v. ALG, Inc.*, No. 94 C 3619, 1994 WL 583324, at *3 (N.D.Ill. Oct. 22, 1994); *Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.*, 844 F. Supp. 1271 (N.D. Ill. 1994).

found liable to Costas, prejudicing Ted by exposing him to two inconsistent judgments.  In *BTC Resolution v. Ford Motor Co.*, No. 1:06 cv 144, 2006 WL 1049181, *2-4 (E.D.Va. April 12, 2006)[10], the court granted the Ford's motion to dismiss for failure to join a necessary, indispensable party, Bering Truck Distribution, after finding if a judgment were entered against Ford for improperly handling funds deposited in an escrow, it might be prejudice Ford by bringing about inconsistent obligations at a later time while acknowledging that the dispute "primarily concerns the amount of the deficiency owed by Bering."  Moreover, Ted faces even greater prejudice than Ford because, unlike in the *BTC* case where the court found that a judgment rendered in Bering's absence would be adequate because no parties beside the parties before the court could claim entitlement to the escrowed funds, Costas might claim entitlement to the funds.  *Id*. at *4; see also *American Home Assurance Company v. Babcock & Wilcox Co.*, No. 06 cv 6506, 2007 WL 4299847, *5 (E.D.N.Y. December 6, 2007) (dismissing an action under Rule 19(b) because a judgment rendered in the absence of an indispensable would prejudice the party not before the court by adjudicating its assigned right to proceeds).  Costas' rights and potential liabilities are woven through this case and he should be made a party to avoid the prejudice that would result for Ted and, potentially, Costas, if he is not.

    2.    **If Costas Mavrakis Is a Named Party in the Lawsuit the Court will be Divested of Subject Matter Jurisdiction**

Plaintiff may not simply add Costas back in as a party**.** The rule of complete diversity applies to alienage cases as well as to "ordinary" diversity cases.  *F. & H.R. Farman-Farmaian Consulting Engineers Firm v. Harza*, 882 F.2d 281, 284 (7th Cir. 1989); citing *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826 (1989).  Plaintiff alleges that Costas is a "citizen of Illinois." (See Compl., ¶4.).  To be a citizen of an individual state within the meaning of the

---

[10] The two unpublished opinions are attached to the motion to dismiss as Exhibit A.

diversity provision, a natural person must be a citizen of the United States. *See e.g., Newman-Green,* 490 U.S. at 828; *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996); *Rodriguez-Diaz v. Sierra-Martinez,* 853 F.2d 1027 (1st Cir.1988). Thus, Plaintiff effectively alleges that Costas is an American citizen.

A party's domicile is determined by federal common law. *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980). "To establish a domicile of choice a person generally must be physically present at the location and intend to make that place his home for the time at least." *Id.*; quoting Restatement (Second) of Conflict of Laws §§ 15, 16, 18 (1971). Plaintiffs allege that Costas resides in Greece which fails the first part of the test for domiciliary: physical presence. (*See* Compl., ¶4).[11] An American national, living abroad, cannot sue or be sued in federal court under diversity jurisdiction, 28 U.S.C. § 1332, unless that party is a citizen, *i.e.* domiciled, in a particular state of the United States. See *Prot*, 85 F.3d at 248 ("[I]f [Plaintiff] was found to be domiciled abroad, he would not be a citizen of any state and diversity of citizenship would also fail"); *Twentieth Century-Fox Film Corp. v. Taylor*, 239 F.Supp. 913, 914 n. 2 (S.D.N.Y. 1965) (*overruled on other grounds*); *Sadat v. Mertes*, 615 F. Supp. 913 (7th Cir. 1980); 1 J. Moore, Moore's Federal Practice § 0.74[4] (1996).[12] Consistent with general principles for determining federal jurisdiction, diversity of citizenship must exist at the time the action is commenced. *Newman-Green,* 490 U.S. at 830. Thus, because Costas, an indispensable party, is alleged to be a U.S. citizen but is domiciled in Greece, diversity of citizenship cannot

---

[11] To the extent Plaintiffs amend the Complaint to include allegations that Costas is not domiciled in Greece, Ted will submit evidence that Costas is, in fact, a Greek domicile. In making jurisdictional assessments, the court may consider affidavits and may even hold evidentiary hearings to decide facts. *Retired Chicago Police Ass'n v. City of Chicago,* 76 F.3d 856, 862 (7th Cir.1996) (affirming dismissal for lack of jurisdictional standing based on factual findings).

[12] Even if Plaintiff alleged that Costas was a Greek citizen the Court would not have diversity jurisdiction because alienage jurisdiction does not encompass a foreign plaintiff suing a foreign defendant. *See Jain v. De Mere*, 51 F.3d 686, 689 (7th Cir. 1995).

exist and the Plaintiff's allegation that federal jurisdiction exists under 28 U.S.C. §1332(a)(2) is incorrect.

## **CONCLUSION**

For the reasons set forth above, Defendant Theodore Mavrakis, pursuant to Fed. R. Civ. P. 9 and Fed. R. Civ. P. 12, respectfully moves this Court: (1) to dismiss Counts II, III and IV of the pending complaint against Theodore Mavrakis; and (2) for such further relief as is just and proper.

Respectfully Submitted,<br>
**THEODORE MAVRAKIS**

 /s/ Bruce N. Menkes<br>
One of his Attorneys

Bruce N. Menkes<br>
John D. Fitzpatrick<br>
Lindsay H. LaVine<br>
**MANDELL MENKES LLC**<br>
333 West Wacker Drive, Suite 300<br>
Chicago, Illinois 60606<br>
(312) 251-1000