Westlaw.

Slip Copy
Slip Copy, 2007 WL 4299847 (E.D.N.Y.)
(Cite as: Slip Copy, 2007 WL 4299847)

C
American Home Assur. Co. v. Babcock & Wilcox Co.
E.D.N.Y.,2007.
Only the Westlaw citation is currently available.NOT FOR PUBLICATION
United States District Court,E.D. New York.
AMERICAN HOME ASSURANCE COMPANY and Navigators Insurance Company, Subscribing to Policy No. C1874, Plaintiffs,
v.
The BABCOCK & WILCOX COMPANY, Defendant.
No. 06-CV-6506.

Dec. 6, 2007.

Lawrence B. Brennan, Christine Adele Civitano, Wilson Elser Moskowitz Edelman & Dicker LLP, New York, NY, for Plaintiffs.
Joanna A. Diakos, Kirkpatrick & Lockhart Preston Gates Ellis, LLP, New York, NY, Neal Brendel, Kirkpatrick & Lockhart Preston Gates Ellis, LLP, Pittsburgh, PA, for Defendant.

*MEMORANDUM & ORDER*

AMON, District Judge.
*1 Plaintiffs American Home Assurance Corporation ("AHAC") and Navigators Insurance Company ("NY Navigators") filed a declaratory judgment action against defendant Babcock & Wilcox Company ("B & W"). B & W has filed a motion to dismiss, asserting that AHAC has failed to join two necessary and indispensable parties, and that joinder of these parties will destroy the Court's diversity jurisdiction. For the reasons set forth below, the Court grants defendant's motion to dismiss.

**I. Background**

On December 7, 2006, plaintiff AHAC filed this declaratory judgment action, seeking a declaration that it is not responsible as the insurer under an ex-

cess general liability policy held by defendant B & W. The insurance policy at issue is an excess general liability policy that provides $50 million in insurance coverage in excess of $325 million provided by other insurance carriers. (Am.Compl., Exh. A.) The policy was executed in 2003. (*Id.*) The plaintiff wishes to be exonerated from liability for damages arising out of a fire at a refinery owned by Citgo Petroleum Corporation, a Delaware corporation headquartered in Texas, and PDV Midwest Refining, L.L.C., a Delaware corporation domiciled in Illinois (collectively, "Citgo"). In connection with the fire, Citgo filed suit against B & W in Illinois state court, seeking damages of approximately $545 million, in excess of all of B & W's insurance limits, including the policy at issue. On November 6, 2006, the Illinois state court entered judgment on a verdict in favor of Citgo in the amount of $387,421,694.65. Shortly thereafter, AHAC filed a declaratory judgment action against B & W, requesting that this Court declare that there is no coverage under the insurance policy or that the insurance policy is void. After the action commenced, B & W assigned all its insurance rights to Citgo as part of a global settlement of the underlying action.

The insurance policy is subscribed to by two insurers: AHAC and an entity known as Navigators Insurance. Although the original complaint named only AHAC as plaintiff, AHAC amended its complaint to add Navigators Insurance Company ("NY Navigators"), a New York corporation headquartered in New York. (Am.Compl. ¶¶ 2, 5.) B & W contends, however, that the co-insurer is actually a separate and distinct entity called Navigators Insurance Services of Texas, Inc, ("Texas Navigators"), a Texas corporation domiciled in Texas. (Am.Compl., Exh. A.)

B & W has moved to dismiss the complaint, asserting that the plaintiffs have failed to name two necessary and indispensable parties, Texas Navigators, who is named as an insurer on the policy, and Citgo, to whom the insurance rights have been as-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                            Page 2
Slip Copy, 2007 WL 4299847 (E.D.N.Y.)
**(Cite as: Slip Copy, 2007 WL 4299847)**

signed. B & W asserts that joining both of these parties will destroy diversity jurisdiction, as Citgo and Texas Navigators both are citizens of Texas. *See* 28 U.S.C. § 1332(c).

## II. Discussion

### A. Joinder of necessary and indispensable parties destroys diversity jurisdiction

*\*2* Pursuant to Rule 19 of the Federal Rules of Civil Procedure, the court must conduct a two-step inquiry to determine whether an action must be dismissed for failure to join a necessary and indispensable party. *See Associated Dry Goods Corp. v. Towers Fin. Corp.,* 920 F.2d 1121, 1123-24 (2d Cir.1990). First, the court must focus on whether the presence of the party to the action is necessary. Specifically, Rule 19(a) provides, in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

If a party is necessary, but joinder would divest the court of jurisdiction, the court must consider whether dismissal is warranted under Rule 19(b), that is, whether the suit can proceed "in equity and good conscience" without the necessary party. *See* Fed.R.Civ.P. 19(b); *Associated Dry Goods,* 920 F.2d at 1124. As a general rule, courts prefer to avoid dismissing the action; thus, "very few cases should be terminated due to the absence of non-

diverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible ." *Jaser v. New York Property Ins. Underwriting Ass'n,* 815 F.2d 240, 242 (2d Cir.1987).

The criteria for determining whether a party is indispensable are set forth in Federal Rule of Civil Procedure 19(b). A court should consider: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties, (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided, (3) whether a judgment rendered in the person's absence will be adequate, and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. *See Seneca Nations of Indians v. New York,* 383 F.3d 45, 48 (2d Cir.2004).

### 1. Navigators Insurance of Texas is necessary and indispensable

B & W asserts that Texas Navigators is a necessary and indispensable party because it is named as the co-insurer on the insurance policy, and is therefore potentially liable for 20% of the $50 million coverage set forth in the policy. AHAC does not dispute that the co-insurer is a necessary and indispensable party. However, AHAC claims that although Texas Navigators is the party named on the insurance policy at issue, Texas Navigators it is merely the "managing general agent" and that New York Navigators, a separate and distinct entity, is actually the co-insurer. Thus, AHAC claims that Texas Navigators is not necessary and indispensable.

*\*3* Under New York law, when the terms of a policy are "are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement." *United States Fidelity & Guar. Co. v. Annunziata,* 67 N.Y.2d 229, 232, 501 N.Y.S.2d 790, 492 N.E.2d 1206 (N.Y.1986). B & W's 2003 policy,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4299847 (E.D.N.Y.)
**(Cite as: Slip Copy, 2007 WL 4299847)**

which is the policy at issue, clearly identifies the insurers as AHAC and "Navigators Insurance Services of Texas." (Am. Compl., Ex. A at p. 4, 501 N.Y.S.2d 790, 492 N.E.2d 1206.) New York Navigators is not named on the insurance policy at issue, nor is any other Navigators entity domiciled in New York. Thus, the policy, on its face, indicates that Texas Navigators is the co-insurer and is liable under the contract.

AHAC argues, however, that Texas Navigators is a "managing general agent" of New York Navigators and that New York Navigators, as the principal, is the true insurer under the contract. AHAC submits a number of documents and affidavits in support of its argument. For example, AHAC argues that Texas Navigators' articles of incorporation state that it was incorporated "to act as general agent for one or more admitted and licensed insurance companies or carriers."(See N. Brendel Aff., Exh. A.) In addition, although the 2002 policy refers to the insurer as "Navigators Insurance Services of Texas," that policy was signed by Walter Caskey on behalf of "Navigators Insurance Company per Navigators Insurances Services of Texas, Inc." (Caskey Aff., Exh. 9) Furthermore, Caskey sent facsimiles to B & W's insurance broker, regarding each of the 2002 and 2003 policies, in which the "company" is referred to as New York Navigators. (Caskey Aff., Exhs. 8, 11.)

However, just as AHAC has submitted documents in which the parties to the insurance policy refer to New York Navigators, B & W has submitted papers in which the parties refer to Texas Navigators. For example, B & W has submitted a binder for the 2003 policy, which refers to the "security" as AHAC and "Navigators Insurance Services of Texas, Inc. Thru Somerset Insurance."(See Bowe Aff., Exh. B.) In addition, B & W has submitted a letter, written by AHAC's counsel and addressed to B & W, in which AHAC's counsel refers to "American Home Assurance Company and its following underwriter on the captioned policy, Navigators Insurance Services of Texas, Inc." (See N.

Brendel Aff. II, Exh. C.)

Finally, both Texas Navigators and New York Navigators are currently parties to lawsuits regarding the policy at issue. On February 26, 2007, after B & W requested permission to file the instant motion to dismiss, AHAC amended its complaint to include New York Navigators as a plaintiff. In addition, approximately a month after AHAC filed this declaratory judgment action, B & W, Citgo, and certain underwriters to the policy filed a lawsuit in state court in Louisiana, the state in which the policy was issued for delivery, seeking payment under the policy. The plaintiffs in that action named Texas Navigators and AHAC as defendants.

*4 As Texas Navigators is not a party to this lawsuit, which is still at the pleading stage, the Court declines to determine as a matter of law which Navigators entity is the co-insurer on the insurance policy. Such a determination could potentially impede Texas Navigators' ability to defend the aforementioned Louisiana state action. Even without determining which Navigators entity is the co-insurer, however, it is clear that Texas Navigators is a necessary and indispensable party. Texas Navigators has an interest in the subject of the action, as this Court's determination of whether the insurance policy is valid, and whether the incident at issue is covered by the policy, could impede Texas Navigators' ability to defend the Louisiana state lawsuit.

Furthermore, joinder is proper, even if diversity is destroyed, as the suit cannot proceed in equity and good conscience without Texas Navigators. First of all, a judgment rendered in Texas Navigators' absence is not only prejudicial to Texas Navigators, but is potentially prejudicial to New York Navigators and B & W, who may not be able to obtain full relief. This Court cannot determine, in Texas Navigators' absence, which of the Navigators entities is the co-insurer under the contract. That is, New York Navigators is unable to assert that the policy is invalid against it because it is not named as the co-insurer on the insurance policy. Thus, New York Navigators cannot assert all of the defenses which

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                           Page 4
Slip Copy, 2007 WL 4299847 (E.D.N.Y.)
**(Cite as: Slip Copy, 2007 WL 4299847)**

would be available to it should it be sued for pay-
ment under the contract. Similarly, B & W cannot
obtain a declaration that New York Navigators is li-
able under the contract. Thus, any declaratory re-
lief, for either New York Navigators or B & W,
will be less than full.

In addition, it is not possible for the Court to fash-
ion relief so as to lessen the prejudice to Texas
Navigators. Whether the policy is valid as to the in-
surers generally, and whether the policy covers the
incident at issue, are issues that appear to be
identical with respect to both AHAC and its co-
insurer. The Court cannot declare that the policy
covers the incident at issue for AHAC, but not for
the co-insurer. In addition, the plaintiffs have an
adequate remedy if the action is dismissed for non-
joinder. First of all, the complaint asserts a state
law cause of action. The plaintiffs may choose to
pursue a declaratory judgment action in New York
state court. Indeed, during oral argument on this
motion, the Court was informed that AHAC had
filed a declaratory judgment action in New York
state court on the same day as the instant federal ac-
tion was filed, although that case was never served
on the defendants and has since lapsed.

Furthermore, this suit is a declaratory judgment ac-
tion in which the plaintiffs seek to be absolved of
liability under the policy in anticipation of a claim
under that policy. As noted above, on January 18,
2007, B & W, Citgo and certain underwriters to the
policy filed a comprehensive lawsuit in Louisiana,
the state in which the policy was issued for deliv-
ery, seeking payment under the policy. The
plaintiffs may assert any arguments as to the valid-
ity of the contract and coverage under that contract
in the Louisiana lawsuit.

*5 Accordingly, Texas Navigators is a necessary
and indispensable party to this action.

**2. Citgo is necessary and indispensable**

B & W further argues that Citgo is a necessary and

indispensable party to this action. On November 6,
2006, prior to the commencement of this suit, an
Illinois jury awarded a verdict in favor of Citgo and
judgment was entered in the approximate amount of
$387 million. (See N. Brendel Aff., Exh. A.) Citgo,
therefore, is a judgment creditor of B & W, and pri-
or to the filing of this lawsuit, had a right to collect
on any insurance proceeds implicated by the jury
verdict. Furthermore, shortly after the action com-
menced, B & W assigned all its insurance rights to
Citgo as part of a global settlement of the underly-
ing action. B & W retains no monetary interest un-
der the insurance contract. AHAC was aware, prior
to filing the declaratory judgment action, that this
assignment of insurance rights was imminent. (See
Caskey Aff., Exh. 16.)

Thus, Citgo has an interest in this Court's determin-
ation as to whether there is coverage under the in-
surance policy or whether the policy is void. Should
this Court determine that the policy is not valid, or
that the incident at issue is not covered by the
policy, Citgo, the assignee of the $50 million insur-
ance payments under the settlement agreement, will
not be able to collect that payment. *See Traveler's
Indem. Co. v. Dingwell,* 691 F.Supp. 503, 507-09
(D.Me.1988), *aff'd,* 884 F.2d 629 (1st Cir.1989)
(noting that insured retained negligible interest dis-
missing declaratory judgment of insurer for failure
to join assignees of insurance contract, where in-
sured retained "negligible" interest in the insurance
proceeds). Accordingly, the disposition of the ac-
tion may "as a practical matter impair or impede
[Citgo's] ability to protect [its] interest ...."*Id.* at
507 (quoting Fed.R.Civ.P. 19(a)); *see also Pay Tel
Sys., Inc. v. Seiscor Techs., Inc.,* 850 F.Supp. 276,
278 (S.D.N.Y.1994) ("Where complete assignments
[of claims] have been made, the assignee is the real
party in interest and a necessary party under
Fed.R.Civ.P. 19.").

Furthermore, joinder of Citgo is proper, even if it
destroys diversity jurisdiction. As noted above, a
judgment rendered in the Citgo's absence would be
prejudicial, as Citgo may not be able to collect the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                            Page 5
Slip Copy, 2007 WL 4299847 (E.D.N.Y.)
**(Cite as: Slip Copy, 2007 WL 4299847)**

$50 million insurance payments. Furthermore, the Court cannot shape its relief so as to lessen or ameliorate the prejudice to Citgo. As the plaintiffs themselves note, "Citgo's rights, if any, under the Policy are purely derivative of B & W." (Pl.'s Br. at 7.) This Court cannot declare that the policy is void as to B & W's right to collect without also determining that it is void as to Citgo's right to collect. If the Court were to make such a declaration, any relief granted to the plaintiffs would be meaningless. Thus, any determination that B & W's insurance contract is invalid, or that it does not cover the incident at issue, must apply with equal force to Citgo. Finally, as discussed above, the plaintiffs have an adequate remedy if the action is dismissed for nonjoinder.

**\*6** The plaintiffs argue that Citgo had no contractual rights under the policy when this declaratory judgment action was commenced and that it was only after the action was commenced that Citgo and B & W entered in to the settlement agreement wherein B & W assigned Citgo its rights. (Pl.'s Br. at 7.) However, prior to the filing of this declaratory action, the plaintiffs were aware that Citgo would be entitled to the proceeds of the policy, both because Citgo was a judgment creditor based on the underlying incident and because Citgo and B & W were negotiating a settlement agreement under which all insurance rights would be assigned to Citgo. It is also apparent that the plaintiffs filed their lawsuit in response to the impending settlement agreement. B & W informed AHAC that Citgo was demanding payment of the $50 million policy as part of a settlement agreement as early as November 17, 2006. On December 6, 2006, B & W informed AHAC once more that it wished to settle with Citgo, and that Citgo was demanding full payment of the AHAC policy. (Brennan Aff., Exh. 16.) The following day, B & W filed the instant action. As one court has noted in a similar context: "Under these circumstances, we would be blinking at reality if we allowed the effective date of the agreement to control our analysis and regarded the [assignees] as mere potential claimants to whom an

interest later was transferred rather than as interested parties from the outset of the declaratory judgment action. Rule 19 does not require such a myopic and formal approach toward identifying interested parties."*Travelers Indem. Co. v. Dingwell,* 884 F.2d 629, 634 (1st Cir.1989) (internal quotations and citation omitted). Accordingly, Citgo is a necessary and indispensable party, and must be joined even if doing so destroys diversity jurisdiction.

**B. The Court declines to exercise its discretionary jurisdiction**

Finally, even if diversity jurisdiction does exist, the Court has substantial discretion to decline to exercise jurisdiction because the plaintiffs request relief under the Declaratory Judgment Act. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) ("[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."); *Dow Jones & Co. v. Harrods Ltd.,* 346 F.3d 357, 359 (2d Cir.2003) (holding that the Declaratory Judgment Act "by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory judgment action or not") (citing *Wilton,* 515 U.S. 277 at 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 and *Broadview Chem. Corp. v. Loctite Corp.* 417 F.2d 998, 1000 (2d Cir.1969)); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Turbi de Angustia,* No. 05 Civ.2068, 2005 WL 2044930, at \*2 (S.D.N.Y. August 23, 2005) (noting that district courts have broad discretion in declining to exercise jurisdiction over declaratory actions they would otherwise be able to hear) (citations omitted). The Declaratory Judgment Act "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."*Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952). The statute reads, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ...*may* declare the rights and other

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4299847 (E.D.N.Y.)
**(Cite as: Slip Copy, 2007 WL 4299847)**

Page 6

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."28 U.S.C. § 2201(a) (emphasis added)."The statute's textual commitment to discretion and the breadth of leeway [the Supreme Court] ha[s] always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.... In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."*Wilton,* 515 U.S. at 286-88 (internal citations and quotations omitted).

*7 A district court's exercise of discretion under the Declaratory Judgment Act is informed by two concerns; namely (1) whether "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) whether "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."*Broadview Chem. Corp.,* 417 F.2d at 1000-01;*see also Dow Jones & Co.,* 346 F.3d at 359. This test has been expanded to additionally ask: "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy."*Dow Jones & Co.,* 346 F.3d at 359 (citing *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A.,* 28 F.3d 572, 577 (7th Cir.1994); *Grand Trunk R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984)). A court may also consider whether entertaining a declaratory judgment will result in duplicative proceedings on the federal and state levels or piecemeal litigation. *See Wilton,* 515 U.S. at 280-81 (affirming lower courts' decisions to decline declaratory judgment action to avoid piecemeal litigation, forum shopping, and duplicative proceedings).

In this case, the factors weigh against this Court's exercise of jurisdiction. Although resolution of the coverage dispute may resolve some of the legal relations in issue, it will not resolve them all, nor is it likely to terminate the controversy giving rise to the proceeding. As noted above, the instant declaratory judgment action cannot provide full relief to the litigants or other interested parties. Therefore, an exercise of jurisdiction by this court will not "terminate and afford relief from the uncertainty ... giving rise to the proceeding"; rather, an incomplete resolution of these legal issues by this Court will create additional uncertainty.

Furthermore, declining to exercise jurisdiction will not cause prejudice to any party, because the legal matters at issue in this case could be resolved by the filing of a declaratory judgment in state court, where the instant jurisdictional issues will not arise. Indeed such a case was filed and apparently not pursued. Moreover, the state court case currently pending in Louisiana, where AHAC and Texas Navigators have already been named as defendants, is a better and more effective means to resolve the underlying dispute. As New York Navigators is not currently a party to that lawsuit, the Louisiana case is not strictly parallel to the instant action. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp,* 108 F.3d 17, 22-23 (2d Cir.1997) ("Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same."). However, principles of abstention still apply particularly because there does not seem to be any jurisdictional impediment to New York Navigators presence in the Louisiana lawsuit. Accordingly, B & W and the other Louisiana plaintiffs could choose to amend their complaint to add a cause of action against New York Navigators. Alternatively, if New York Navigators wishes to settle any dispute as to its liability under the insurance contract, it may seek to intervene in the Louisiana lawsuit.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4299847 (E.D.N.Y.)
**(Cite as: Slip Copy, 2007 WL 4299847)**

Page 7

*8 Additionally, although the parties dispute whether New York or Louisiana law applies, it is abundantly clear that the underlying insurance dispute does not implicate any federal issues. The Supreme Court has cautioned that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."*Brillhart,* 316 U.S. at 495;*see also Wilton,* 515 U.S. at 283;*Cadle Co. v. Bankers Fed. Sav. FSB,* 929 F.Supp. 636, 639 (E.D.N.Y.1996) ("Declaratory judgment actions which have as their underlying basis rights that are essentially governed by state law present particularly appropriate cases for application of the abstention doctrine."). By declining to exercise jurisdiction, the Court will avoid creating piecemeal litigation and duplicating many of the proceedings occurring on the state level in Louisiana.

As a result, "[d]istrict courts routinely invoke the doctrine of abstention in insurance coverage actions, which necessarily turn on issues of state law."*Travelers Indem. Co. v. Philips Elecs. N. Am. Corp.,* No. 02-CV-9800, 2004 WL 193564, at *2 (S.D.N.Y. Feb.3, 2004) (citing *Reliance Ins. Co. of Illinois v. Multi-Financial Sec. Corp.,* No. 94-CV-6971, 1996 WL 61763, at *3-4 (S.D.N.Y. Feb.13, 1996) ("Tipping heavily in favor of abstention in this case ... is the fact that state law will govern the outcome of this action. With very narrow exception, Congress has long explicitly exempted the federal government from regulation of the insurance industry."));  *Wilton,* 515 U.S. at 279-90;*Nat'l Union Fire Ins. Co.,* 108 F.3d at 20-23;*Am. Motorists Ins. Co. v. Glidden Co.,* 129 F.Supp.2d 640, 641 (S.D.N.Y.2001); *Nat'l Union Fire Ins. Co. v. Warrantech Corp.,* No. 00-CV-5007, 2001 WL 194903, at *3 (S.D.N.Y. Feb.27, 2001); *Commercial Underwriters Ins. Co. v. Glowmaster Corp.,* 105 F.Supp.2d 268, 270 (S.D.N.Y.2000); *Fed. Ins. Co. v. Safeskin Corp.,* No. 98-CV-2194, 1998 WL 832706, at *3-4 (S.D.N.Y. Nov.25, 1998); *Employers Ins. of*

*Wausau v. El Paso Tenn. Pipeline Co.,* No. 98-CV-4612, 1998 WL 790937, at *1-2 (S.D.N.Y. Nov.13, 1998)); *see also Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.,* 475 F.Supp.2d 213, 234 (E.D.N.Y.2007) (granting motion to abstain from declaratory judgment cause of action where there is a parallel pending state court action and the rule of decision is one of state, not federal, law).

Accordingly, even if joinder of Texas Navigators and Citgo were not proper, such that this Court retained its diversity jurisdiction, the Court would decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act.

### CONCLUSION

For the reasons set forth above, the Court grants defendant's motion to dismiss. The Clerk of the Court is directed to enter judgment in accordance with this order and to close the case.

*9 SO ORDERED.

E.D.N.Y.,2007.
American Home Assur. Co. v. Babcock & Wilcox Co.
Slip Copy, 2007 WL 4299847 (E.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2006 WL 1049181 (E.D.Va.)
(Cite as: Slip Copy, 2006 WL 1049181)

**C**
BTC Resolution, LLC v. Ford Motor Credit Co.
E.D.Va.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. Virginia.
BTC RESOLUTION, LLC, Plaintiff,
v.
FORD MOTOR CREDIT CO., Defendant.
**No. 1:06CV144.**

April 12, 2006.

Michael McGettigan, Richards McGettigan Reilly
& West PC, Alexandria, VA, for Plaintiff.
George Richard Pitts, Dickstein Shapiro Morin &
Oshinsky LLP, Washington, DC, for Defendant.

*MEMORANDUM OPINION*

CACHERIS, J.
*1 This matter comes before the Court on Defendant's motion to dismiss pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure. For the following reasons, the Court will grant Defendant's motion to dismiss.

I. Background

This action arises from conflicting claims over a $16,033,400 fund currently held in escrow. In 1999, Defendant, Ford Motor Credit Company ("Ford") made several loans to Bering Truck Corporation and Bering Truck Distribution, LLC (collectively, "Bering"). Each loan was secured by Bering's assets, and Bering entered into written agreements that granted Ford first priority security interests in such assets. In February 2001, Bering failed to meet its payment obligations to Ford, allegedly as a result of collusive business practices between Hyundai Motor Company and DaimlerChrysler AG. At the time, the outstanding amount due under the loans totaled $25,454,164.17.

After the default, Bering and Ford entered into a

forbearance agreement and began to discuss methods for pursuing Bering's inchoate legal claims against Hyundai and DaimlerChrysler. In April 2001, Bering and Ford entered into an agreement ("assignment agreement") under which Bering assigned its claims to BTC Resolution, LLC ("BTC"), the Plaintiff in this case. BTC agreed to prosecute the claims and distribute the proceeds in a specified manner.[FN1] In June 2001, Bering ceased doing business and voluntarily surrendered its assets to Ford. According to the allegations of Plaintiff's complaint, the assets that were surrendered to Ford as collateral had a value in excess of $40 million. Plaintiff alleges that Ford failed to dispose of these assets in a commercially reasonable fashion.

> FN1. The assignment agreement provided that any proceeds resulting from the claims would be disbursed first to satisfy the legal expenses incurred by BTC in prosecuting the claims, second to reimburse Ford for any expenses it incurred in liquidating Bering's assets, and third to pay an amount equal to any unsatisfied obligations due Ford under the original loans. Any remaining proceeds would then be disbursed to BTC.

BTC pursued contract claims against Hyundai and obtained an arbitration award in its favor of approximately $7,000,000, most of which satisfied BTC's legal and related expenses. BTC also settled antitrust and tort claims against Hyundai and DaimlerChrysler for an undisclosed amount. After BTC deducted its legal fees and expenses, as well as a portion of the sum to which all parties agreed BTC was entitled, it placed $16,033,400 in escrow pursuant to a Qualified Settlement Fund Escrow Agreement ("QSF Agreement"). Ford claimed that it was entitled to the amount in escrow to reimburse its liquidation expenses and to meet unsatisfied obligations under the loans to Bering.

On February 8, 2006, BTC filed this civil action

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1049181 (E.D.Va.)
**(Cite as: Slip Copy, 2006 WL 1049181)**

Page 2

seeking a declaratory judgment that it is entitled to the entirety of the funds held in escrow. Ford's motion to dismiss was nominally filed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. As Ford's motion is premised on BTC's purported failure to state a claim and failure to join indispensable parties, however, the Court will consider it to be filed under Rules 12(b)(6) and 12(b)(7). Ford's motion is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*De Sole v. United States,* 947 F.2d 1169, 1177 (4th Cir.1991) (citations omitted); *see also Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted."*Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff."*Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8.

*2 Under Rule 12(b)(7), an action may be dismissed for failure to join an indispensable party. The issue of whether a party is indispensable requires a two-step inquiry. *See*Fed.R.Civ.P. 19; *Owens-Illinois, Inc. v. Meade,* 186 F.3d 435, 440 (4th Cir.1999). The first question that must be determined is whether a party is "necessary" pursuant to Rule 19(a).*Owens-Illinois,* 186 F.3d at 440. Second, if joinder of a "necessary" party is not feasible, the Court must determine whether the party is indispensable to the action or whether the action may continue in the party's absence. *Id.* In

reaching this second determination, the Court must consider several factors, including whether a judgment rendered in the party's absence would be prejudicial, the extent to which prejudice can be lessened or avoided by shaping relief, whether a judgment rendered in the party's absence would be adequate, and whether the plaintiff will have an adequate remedy if the action is dismissed.Fed.R.Civ.P. 19(b).

## III. Analysis

Ford's motion to dismiss for failure to state a claim is premised on the argument that BTC's lawsuit is, at heart, an allegation that Ford improperly disposed of Bering's collateral. According to Ford, BTC's action is therefore essentially a claim for reduction or elimination of the deficiency claimed by Ford against Bering. Such a claim could only be asserted by Bering.[FN2]*See*Va.Code § 8.9A-626.

> FN2. At the oral argument on this motion, BTC asserted that the assignment agreement resulted in the assignment to BTC of any claims for reduction or elimination of the deficiency owed by Bering to Ford. Contrary to BTC's characterization, the assignment agreement actually provides only for the assignment of the Hyundai/Daimler claims. There is no language in the agreement indicating that claims related to Bering's deficiencies were assigned to BTC. In fact, the agreement expressly states that BTC did not assume Bering's debts, obligations, or liabilities. (Compl. Ex. 2, at 3.) This implies that the right to seek reduction or elimination of any deficiencies remained with Bering as well.

The Court disagrees with Ford's characterization of BTC's complaint. While BTC does allege that Ford failed to dispose of Bering's assets in a commercially reasonable manner, the actual claim that BTC asserts is for a declaratory judgment establishing BTC's right to the escrow funds. The issue of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1049181 (E.D.Va.)
**(Cite as: Slip Copy, 2006 WL 1049181)**

whether Ford properly disposed of the collateral is merely a factual issue subsumed within the overall claim. The assignment agreement between Ford and BTC expressly provided that BTC would be entitled to the Hyundai/Daimler claim proceeds after Bering's obligations to Ford were satisfied, and so BTC is entitled to litigate the amount of those obligations. Were the Court to rule otherwise, BTC would be left without a mechanism to establish its rights under the assignment agreement in the event that Bering failed to seek a reduction or elimination of the deficiency under Va.Code § 8.9A-626.

The question that remains is whether the Bering companies are indispensable parties to the instant action. Ford contends that because this action primarily concerns the amount of the deficiency owed by Bering, the action must be dismissed to avoid both prejudice to Bering and the possibility of conflicting legal obligations for Ford and BTC. Before deciding whether Bering is indispensable, the Court must first determine whether Bering is a necessary party. Rule 19(a) provides that a party is necessary if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

*3 Fed.R.Civ.P. 19(a).

The Fourth Circuit has interpreted subsection (1) above to mean that "[c]omplete relief refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *United States v. County of Arlington,* 669 F.2d 925, 929 (4th Cir.1982). *See also LLC Corp. v. Pension Guaranty Benefit Corp.,* 703 F.2d 301, 305 (8th Cir.1983) (Under Rule 19(a)(1),

"[t]he focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person."). In this case, the funds held in escrow are the subject matter of the dispute. Under the QSF Agreement, only BTC and Ford have rights to these funds. Bering has relinquished any right to the proceeds of its claims against Hyundai and DaimlerChrysler. Accordingly, complete relief can be afforded between BTC and Ford in this case.

Nevertheless, Rule 19(a)(2) requires a finding that Bering is a necessary party. According to the Fourth Circuit, "the increased potential for inconsistent judgments is grounds for finding a nonjoinded party necessary." *Owens-Illinois,* 186 F.3d at 441. Further, the "potential for factual, as opposed to legal, 'whipsaw' argues strongly in favor of having one court adjudicate the entire matter with all the parties before it...." *Schlumberger Indus. v. National Sur. Corp.,* 36 F.3d 1274, 1287 (4th Cir.1994).

As stated above, the primary factual issue underlying BTC's claim to the escrow funds concerns Ford's disposition of the assets Bering surrendered as collateral. If the Court were to conclude that BTC was entitled to all or part of the escrow funds, a corollary finding that Ford improperly disposed of the collateral would be necessary. In light of this, the Court is mindful of the fact that Bering retains the ability to seek a reduction or elimination of the deficiency under Va.Code § 8.9A-626.[FN3] The circumstances of this case are therefore clear that Bering can claim an interest relating to the subject of this action and that Bering is so situated that disposition of this matter in Bering's absence may leave Ford exposed to inconsistent obligations.

> FN3. BTC has indicated that Bering is both unwilling and unable to pursue any claims against Ford. For example, BTC has submitted a declaration from William R. Anderson, president of the Bering companies, stating that "[a]ll persons associated with the Bering Entities consider them to be de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1049181 (E.D.Va.)
(Cite as: Slip Copy, 2006 WL 1049181)

Page 4

funct entities."(Pl.'s Opp. Ex. 1, at 3.) The Bering companies continue to exist as legal entities, however, and the assignment agreement implies that they have retained the ability to enforce their rights under Va.Code § 8.9A-626 against Ford. *See supra* note 2. It is therefore clear that the Bering companies continue to have the ability to expose Ford to further litigation on the amount of the deficiency.

The next question before the Court is whether joinder of the absent Bering companies is feasible. Both Bering companies are Delaware corporations, as is Ford. Their joinder would therefore eliminate this Court's diversity-of-citizenship jurisdiction. At oral argument on the instant motion, BTC suggested a mechanism by which the Bering companies could be joined to this action. BTC suggests that Ford assert a counterclaim for a deficiency judgment and join the Bering companies to this action pursuant to Rule 13(h) of the Federal Rules of Civil Procedure. Then, according to BTC, the Bering companies could assert their claims for reduction or elimination of the deficiency owed to Ford. BTC argues that this Court could then exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. The Court disagrees.

*4 Essentially, BTC is seeking to join the Bering companies as plaintiffs against Ford in an action to reduce or eliminate their deficiencies, pursuant to Va.Code § 8.9A-626. Congress has expressly denied supplemental jurisdiction over persons proposed to be joined as plaintiffs in certain diversity-of-citizenship cases. *See*28 U.S.C. § 1367(b).Section 1367 thus precludes the exercise of supplemental jurisdiction in this case, and *United Capitol Insurance Co. v. Kapiloff,* 155 F.3d 488 (4th Cir.1998), upon which BTC relies, does not dictate a different result. In *United Capitol,* the Fourth Circuit held that a district court could exercise supplemental jurisdiction over nondiverse insurance brokers who were named as counterclaim defendants by the defendant. *See*155 F.3d at 493. By con-

trast, in this case, it the plaintiff who seeks to have the defendant join the nondiverse parties, only so that those parties can then assert claims against the defendant.Section 1367(b) will not permit this.

As joinder of the Bering companies is not feasible, the Court must consider the factors set forth in Rule 19(b) to determine whether the Bering companies are "indispensable" parties. As an initial matter, the Court has already discussed the possibility that judgment rendered in Bering's absence would result in prejudice to Ford. The second question under Rule 19(b) is whether the Court can take measures to lessen or avoid the possibility of prejudice to Ford, and the parties have suggested no such measures.

The third inquiry is whether judgment rendered in Bering's absence would be adequate. Undoubtedly it would, as no parties besides BTC and Ford can claim entitlement to the funds in escrow. The Court would be able to fully resolve the parties' rights to these proceeds. Fourth, the Court must consider whether BTC would have an adequate remedy if the action is dismissed. In this regard, the Court notes that Ford has commenced an action in the Circuit Court for Warren County, Virginia. The Warren County action seeks to resolve the parties' rights to the escrow funds and includes the Bering companies among the parties.

In light of the possibility of Ford's exposure to inconsistent legal obligations and the availability of this alternate forum, the Court finds that the interests of justice favor dismissing the instant action and requiring BTC to pursue its claims in state court. Accordingly, the Court will find the Bering companies to be indispensable parties and will dismiss this action pursuant to Rule 12(b)(7).

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to dismiss. An appropriate Order will issue.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                         Page 5
Slip Copy, 2006 WL 1049181 (E.D.Va.)
**(Cite as: Slip Copy, 2006 WL 1049181)**


E.D.Va.,2006.
BTC Resolution, LLC v. Ford Motor Credit Co.
Slip Copy, 2006 WL 1049181 (E.D.Va.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.