IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICOLAS BALAGIANNIS and<br>RESERVE HOTELS PTY LIMITED<br>As trustee for the NBF TRUST<br><br>Plaintiffs,<br><br>v.<br><br>THEODORE MAVRAKIS<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 08 C 943<br><br>Hon. District Judge Leinenweber<br><br>Hon. Magistrate Judge Brown |

**DEFENDANT THEODORE MAVRAKIS' REPLY IN SUPPORT OF HIS MOTION
TO DISMISS COUNTS II, III AND IV OF PLAINTIFF'S COMPLAINT**

**I.    INTRODUCTION**

Plaintiff Nicolas Balagiannis[1] opens his Response in Opposition to Defendant's Motion to Dismiss ("Response") with a cheap shot, claiming to be one of "several victims defrauded by Costas and Ted Mavrakis." No other "victims" are mentioned anywhere in the Complaint or in the Response. Balagiannis does not identify any court which has ever found Theodore Mavrakis ("Ted") liable for fraud, or any cases where fraud is even alleged, or give even a single detail about the nature of the other alleged frauds. Balagiannis' unsupported claim is improper and should be stricken.

---

[1] Balagiannis insists in his Response that he was acting on behalf of Reserve Hotels Pty Limited as trustee for the NBF Trust ("Reserve") in the transactions he complains of, and that Reserve is therefore also a plaintiff in this case. See Response at 1, fn.1. However, this allegation is not mentioned in the Complaint. According the Complaint, Reserve's role appears to be limited to wiring funds to the escrow allegedly established by Theodore and Costas Mavrakis. See paragraph 14. As Ted pointed out in his opening Memorandum, Reserve is also not mentioned in any of the operative documents. See Memorandum at 8, and fn. 8. Reserve should be dismissed as a plaintiff.
170266v1

Much of Balagiannis' argument that Counts II, III and IV should not be dismissed is based on other allegations which are nowhere to be found in the Complaint. For the first time in his Response, Balagiannis claims that (i) the funds held in the escrow allegedly established by Ted and Costas Mavrakis ("Costas") could not be released without Balagiannis' consent, and (ii) Balagiannis gave his consent because Ted and Costas "told Balagiannis that the money must be held by Ted to preserve Costas' right of first refusal." Response at 3, 9. As discussed below, the Court should disregard these new allegations, which are inconsistent with the Complaint, in determining whether to dismiss the Complaint.

The Response is unpersuasive for other reasons which are also discussed below.

## II. ARGUMENT

### A. Count II (Guaranty) Should Be Dismissed

#### 1. The Terms of the Letter Which Plaintiff Alleges to be the Guaranty Control Over Plaintiff's Characterization of that Letter

Balagiannis argues that the Court can "infer" from the language of the October 22, 2003 letter that it is a guarantee. However, while a pleader is entitled to the benefit of reasonable inferences drawn from his factual allegations, the same rule does not apply to the construction of a document attached to a complaint. The construction of such a document is a legal matter which is appropriately decided on a motion to dismiss. The Court can and should hold that the October 22, 2003 letter is simply not a guaranty. *See* Memo. at 5-6.

A second reason why Ted's alleged statement that he would return and safeguard Balagiannis' funds is not a guaranty is that it is not a promise to answer for the obligation of another. Balagiannis admits that his underlying agreement with Costas did not provide for the obligation which Ted allegedly guaranteed (Response at 8), but states that "[t]his point is irrelevant." *Id.* However, the parties concur that Illinois law defines a guarantee as "an

170266v1                                    2

obligation by one or more parties to answer to answer to another for the debt or obligation of a third party." Response at 7, fn. 4. Balagiannis never alleges that Costas or any other "third party" agreed to return $4 million or to keep the funds safe.

        2.        Balagiannis' Response Impermissibly Adds New, Inconsistent
                 Allegations of Consideration Not Contained in the Complaint

Balagiannis has two responses to Ted's argument that no consideration is alleged for his purported guaranty: (1) Balagiannis' consent to the termination of the escrow was sufficient consideration and (2) the consideration allegedly given by Balagiannis to Costas is sufficient to support Ted's guaranty. The problem with the first argument, as mentioned above, is that the Complaint does not allege either that Balagiannis had to consent to a termination of the escrow, or that Ted made any statement to Balagiannis to persuade him to give his consent. Balagiannis cites Paragraph 19 of his Complaint for these assertions (*see* Response at 3), but that paragraph states in its entirety:

> Since that time [late October, 2003] both Costas Mavrakis and Ted Mavrakis have told Mr. Balagiannis that this money is being held as earnest money to insure that Costas Mavrakis does not waive his right to purchase the stock from Ted Mavrakis pursuant to his right of first refusal. Costas Mavrakis and Ted Mavrakis have continued to make these representations to Mr. Balagiannis through 2007, even though Ted Mavrakis' stock was sold to a third party in 2004.

Adding to the confusion, the Response gives two different versions of the new facts. Page 3 states that Ted and Costas procured Balagiannis' consent to terminate the escrow by stating to Balagiannis that the money must be held by Ted to preserve Costas' right of first refusal, and that the October 22, 2003 "guaranty" was given to Balagiannis' lawyer to "lend further credibility to the arrangement." On page 9, however, the Response claims that Ted alone obtained Balagiannis' consent, and did so solely by providing the guaranty to Balagiannis. The difference is crucial, because in the first version, there is no bargained for exchange.

170266v1                            3

Although a plaintiff is permitted to assert additional facts in responding to the motion to dismiss, those facts must be consistent with the allegations of the complaint. *See, e.g., Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996); *Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434, 439-40 (7th Cir.1994); *Brokaw v. Mercer County,* 235 F.3d 1000, 1006 (7th Cir.2000); *Forseth v. Village of Sussex,* 199 F.3d 363, 368 (7th Cir.2000). Here, the new facts regarding the release of the escrow conflict with the Complaint. In the Complaint, Balagiannis alleged that Costas and Ted themselves terminated the escrow (no mention of Balagiannis authorizing his lawyer to do so) "even though Ted had not transferred the stock to Costas Mavrakis and even though [they] both knew that the money in the escrow was the proceeds of a loan from Mr. Balagiannis to Costas Mavrakis." *See* Compl., ¶18. This allegation implies that Ted and Costas acted contrary to Balagiannis' wishes by terminating the escrow. The new facts assert Balagiannis agreed to the termination. This claim is a moving target.

Balagiannis' second argument is directly contradicted by the cases cited in Ted's opening Memorandum at 6-7, which Balagiannis does not attempt to distinguish. As those cases establish, consideration given to a debtor only supports a guaranty when the guaranty is given at the same time as the debt is incurred. Where, as here, the guaranty is given after the debt is incurred, the consideration given to the debtor is not sufficient, and new consideration is necessary.

   3.  <u>The "Guaranty" is at most a Guaranty of Collection, Not Payment</u>

Balagiannis argues that notwithstanding *Floor v. Melvin,* 5 Ill. App. 3d 463, 464-5 (3d Dist. 1972), the "guaranty" is one of payment, and not collection, and cites *Beebe v. Kirkpatrick,* 321 Ill. 612 (1926) and *Hance v. Miller,* 21 Ill. 636 (1859). However, the *Floor* court

distinguished both of those cases, because the guarantee in *Floor* was only against "loss." *Floor* at 466 ("[I]n our view the guarantee as against 'loss' is in effect a guarantee of collection rather than payment"). That distinction applies to this case as well. Ted did not state "I hereby guarantee this loan" (as in *Beebe*) or "I guarantee payment of the within note at maturity" (as in *Hance*). If he guaranteed anything, it was that "your funds . . . shall not be at risk in any case." *Floor* establishes that that is only a guaranty of collection.

Balagiannis is also wrong in suggesting that the "guaranty" attached to the Complaint must be read "in a light most favorable to Balagiannis" and that he should receive the benefit of "the reasonable inferences that can be drawn from the language of the letter." Response at 7, 8. On the contrary, the language of the alleged guaranty is unambiguous and the Court may rule on its meaning as a matter of law at this stage of the case.[2] "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994). This rule is "aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir.1998). Although a plaintiff is entitled to all reasonable inferences the court may draw from the allegations found in the complaint, courts are "not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (reversing district court's granting of a motion to dismiss after examining the four corners of an agreement referenced in the complaint and finding that, as a matter of law, it did not incorporate by reference an

---

[2] The trial court in *Floor* construed the guaranty in that case on a motion to dismiss, and the Appellate court affirmed.

170266v1                                    5

agreement that included an arbitration clause); quoting 5 Wright & Miller, *Federal Practice & Procedure: Civil 2d,* § 1327 at 766 (1990). Thus, this Court should ignore the factual allegations of the Complaint where they are contradicted by the language of an exhibit. *See Perkins v. Silverstein,* 939 F.2d 463, 469 n. 4 (7th Cir.1991); *see also Bucciarelli-Tieger v. Victory Records, Inc.,* 488 F.Supp.2d 702, 707 (N.D.Ill.,2007) (citing the rule that reasonable inferences should be drawn in favor of claimant before stating "however…when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") The terms of the October 22, 2003 letter Balagiannis attaches to the Complaint reveal that the alleged guaranty is not a guaranty, as a matter of law, and the Court can make that determination by examining the four corners of the letter.

  **B.**  **Count III Does Not Sufficiently Allege a Claim for Promissory Estoppel**

    1.  <u>No Promise to Balagiannis is Alleged.</u>

In an attempt to avoid Ted's argument that the "promise" alleged by Balagiannis was not made to about Balagiannis, Balagiannis relies on a new promise which is not alleged in the Complaint. The Response now claims that Ted made a promise in addition to the one stated in the March 31, 2007 letter. Response at 11. However, that is not what the Complaint says. Paragraph 20 alleges that "On March 31, 2007, Ted Mavrakis asserted that he continued to hold the $3,700,000 as a deposit on the purchase of his stock and that he would go through with that sale if the sale to the third party was ever cancelled . . .A copy of that letter is . . . attached hereto as Collective Exhibit C." Paragraph 34 states "On March 31, 2007, Ted Mavrakis represented that he held the $3.7 million withdrawn from the escrow and promised to [sic.] that amount to Mr. Balagiannis if Mr. Balagiannis elected not to go through with his stock purchase transaction with Costas Mavrakis." Obviously, the promises referred to in ¶ 34, which are the basis of the

170266v1            6

promissory estoppel claim, were the promises which were contained in the letter referenced in ¶ 20. There is no allegation which could support an inference that Ted made a second, separate promise directly to Balagiannis on March 31, 2007. Therefore Count III cannot satisfy the first element of promissory estoppel, which is that an unambiguous promise was made to the plaintiff. *See* Memo. at 8.

        2.        <u>There is No Set of Facts Under Which Balagiannis Could Show Reliance</u>

Balagiannis argues that because reliance is generally considered a question of fact, it cannot be resolved on a motion to dismiss. Response at 11-12. However, he fails to respond to Ted's point that in this case, Balagiannis *could not* have relied up on the March 31, 2007 letter because the letter shows that Ted had no intention of paying anything to Balagiannis. Therefore the Court can rule on the issue of reliance as a matter of law. *See Cozzi Iron and Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir.2001).

    **C.**    **Balagiannis Concedes Critical Weaknesses Which Undermine His Fraud Claim**

        1.        The Fraud Claim Cannot be Based on the Same Representations Which <u>Make Up the Guaranty Claim</u>

Balagiannis implicitly admits that the allegation of fraud that Balagiannis pleaded against Ted in Count III is "sweeping."[3] Rather than defending that allegation, Balagiannis attempts to redirect the Court's attention by referring to the "remaining allegations which are replete with" the specific information Rule 9 requires. *See* Response at 12. These other alleged statements, however, are not part of the alleged fraudulent conduct. Instead, they form the basis of the breach of guaranty claim. *See* Compl., ¶¶16, 19, 20, 21. A plaintiff may not pursue a fraud

---

[3]*See* Compl., ¶ 40: "Ted Mavrakis, and Costas Mavrakis, repeatedly represented to Mr. Balagiannis, during the period October 2003 through March 31, 2007, that the $3.7 million withdrawn from the escrow was being held as a deposit against the future purchase of stock in Theros owned by Ted Mavrakis."

170266v1        7

claim based on allegations which "merely articulate[] plaintiff's breach of contract claim." *We Deliver America, Inc. v. General Growth Properties, Inc.*, No. 03 C 2107, 2003 WL 22836449, *3 (N.D.Ill., Nov. 21, 2003).

If Balagiannis is merely alleging that Defendant lied about his intention to perform the alleged guaranty, such a claim constitutes a breach of a promise of future performance, and is not actionable in Illinois. Under Illinois law, "[t]o support an action for fraud, the alleged misrepresentation must be one of fact and not an expression of opinion. Statements regarding future events are considered opinions, not statements of fact." *People ex rel. Peters v. Murphy-Knight*, 248 Ill.App.3d 382, 390 (Ill.App.Ct.1993) (citations omitted). "[T]he general rule denies recovery for fraud based upon a false representation of intention or future conduct." *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 334 (1977); see also *West v. Western Casualty & Surety Co.*, 846 F.2d 387, 393 (7th Cir.1988) ("A statement that merely expresses an opinion or that relates to future or contingent events, rather than past or present facts, does not constitute an actionable misrepresentation."). Even a false promise of future conduct with no current intent to fulfill that promise will not constitute fraud. *Murphy-Knight*, 248 Ill.App.3d at 386; citing *Ault v. C.C. Services, Inc.*, 232 Ill.App.3d 269 (3rd Dist. 1992) (representations to plaintiff by defendant that another employee would be fired and his accounts reassigned to plaintiff held to be representations of future conduct by defendant and thus not actionable as fraud). Here, none of the alleged misrepresentations which form the basis of the breach of guaranty claim can give rise to an action against Ted for fraud.

There are no specific allegations of fraudulent conduct, and therefore Count IV must be dismissed.

170266v1

8

2. <u>Balagiannis Also Fails to Allege his Reliance on Ted's Representations</u>

Balagiannis' deficiency in pleading is made clear in the Response: "[s]urely if Ted had told Balagiannis that he had given the money to Costas years ago and that the money was gone, Balagiannis would have pursued his remedies at that time, rather than waiting nearly another year." Response at 12. It is incumbent on Balagiannis to allege reasonable reliance. Although the issue is generally not resolved on a motion to dismiss, courts can find reliance unreasonable as a matter of law. *See Cozzi,* 250 F.3d at 574. Balagiannis does not adequately explain in the Response why this Court should not find, as a matter of law, that his alleged reliance was unreasonable.

Instead, Balagiannis repeats his allegation that unspecified representations by Ted caused him to hold off on initiating these proceedings. As discussed above, Balagiannis *could not* have relied on those representations, because the March 31, 2007 letter Ted wrote to Costas stating that if Costas sent a notice, funds would be paid to Costas. *See* Compl. Ex. C. The representations found in this letter to Costas should have, if anything, lead Balagiannis to take action.[4] The requirement that plaintiff's reliance is reasonable means Balagiannis must have been justified in so relying. *Davis v. G.N. Mortgage Corp.,* 396 F.3d 869, 882 (7th Cir.2005). As a matter of law reliance cannot be reasonable where the plaintiff had only to look at the document before him to discover the "fraud." *Tammerello v. Ameriquest Mortg. Co.,* No. 05 CV 0466, 2006 WL 2860936, *7 (N.D.Ill., Sept. 29, 2006); *GreatAmerica Leasing Corp. v. Cozzi*

---

[4] Ted acknowledges that a letter can in some circumstances give rise to a fraud claim, even though no promises were directed to the plaintiff in the letter. It is sufficient, for purposes of fraud, that a misrepresentation reaches the plaintiff and that the plaintiff reasonably relies on the statement. *People ex rel. Peters v. Murphy-Knight,* 248 Ill.App.3d 382, 391 (Ill.App.Ct.1993); citing *St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill.App.3d 925, 954 (1974) ("It is enough that the statement by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it, to his damage.") In this case, however, the letter could not have been reasonably relied upon.

170266v1                                                    9

*Iron & Metal, Inc.*, 76 F.Supp.2d 875, 878 (N.D.Ill.1999); *Kolson v. Vembu*, 869 F.Supp. 1315, 1322 (N.D.Ill.1994) (Where a party "could have discovered the fraud by reading the instrument and had an opportunity to do so[,]" such reliance is "unreasonable as a matter of law, so that the contract stands as written.") As the opening Memorandum explains in greater detail, this letter makes clear that Ted did not believe that he owed any funds to Balagiannis, and had no intention of paying Balagiannis. If Balagiannis believed he was owed funds held by Ted, it could not have been reasonable him to delay litigation, given this unequivocal statement by Ted.

       3.      Balagiannis Does Not Respond to the Argument That Mere Delay in Initiating Litigation Does Not Constitute Damage

Balagiannis did not dispute Ted's point that none of the allegations reveal how Ted Mavrakis' alleged fraudulent misrepresentations caused him damage. *See* Memo. at 10. For this reason alone, Count IV must be dismissed. Even if Balagiannis had adequately alleged the communication of misrepresentations from Ted to Balagiannis, he does not allege how a delay in instituting proceedings caused him damage and simply asks for $3.7 million as damages for the uncertain "fraud." Compl., ¶ 46.

   D.      **Costas Is an Indispensable Party Because Both Ted and Costas Will Be Prejudiced If He Is Not Made a Party to the Lawsuit**

       1.      Balagiannis Strains to Analogize this Case to Typical Guaranty Case But It Is Clearly Not a Typical Guaranty Case

Defendant fully expected that Balagiannis would rely on one of the same Seventh Circuit authorities on indispensable parties that it discovered and cited in the Motion: *Boulevard Bank Nat. Ass'n v. Philips Medical Systems Intern. B.V.*, 15 F.3d 1419, 1423 (7th Cir.1994). It is accurate that a wealth of authority exists in this Circuit and elsewhere that absolute guarantors' motions to join borrowers as indispensable parties are typically denied on the ground that the guarantor agreed to face creditor lawsuits themselves. *See* Memo. at 12, fn. 9. However,

170266v1                          10

Balagiannis' attempt to pigeonhole this case into that line of authority is unavailing, in part because he does not address the persuasive case authorities cited by Ted: *BTC Resolution v. Ford Motor Co.*, No. 1:06 cv 144, 2006 WL 1049181, *2-4 (E.D.Va. April 12, 2006) and *American Home Assurance Company v. Babcock & Wilcox Co.*, No. 06 cv 6506, 2007 WL 4299847, *5 (E.D.N.Y. December 6, 2007). In these cases courts determined that the absence of an indispensable party would prejudice, respectively, the named defendant and a non-party and dismissed claims on motions predicated on Fed. R. Civ. P. 19.

    2.    <u>Costas Is an Indispensable Party</u>

Balagiannis takes a narrow view of the effect that a final judgment might have on Costas' legal rights when he states that a constructive trust is not sought and he only seeks to adjudicate Ted's alleged misdeeds. *See* Response at 5. In fact, under the claim preclusion doctrine, a subsequent claim would be precluded so long as the prior claim included: "(1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits." *Highway J Citizens Group & Waukesha County Envtl. Action League v. U.S. Dept. Of Transp.*, 456 F.3d 734, 741 (7th Cir.2006) (citations omitted). If these requirements are fulfilled, the doctrine of *res judicata* "bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir.1995). If this breach of guaranty case survives the motion, Balagiannis will seek to establish that Ted failed to answer for Costas' debt. If a final judgment is entered finding that Ted was a guarantor and therefore breached a guaranty agreement it will by necessity preclude a subsequent claim that the debt was invalid, *et cetera*. Such an outcome would affect Costas' legal rights.

170266v1                          11

Next, Costas' absence might also prejudice Ted by making him liable to Costas *and* Balagiannis given the statements in the "Informative Note" regarding Ted's willingness to reimburse *Costas'* money or to return the "funds you have deposited". *See* Ex. C. to the Complaint. It is ironic that Balagiannis criticizes Ted for not offering an explanation of the claims Costas might be able to allege against him given the claims asserted in this action. Nevertheless, for purposes of this motion it is sufficient if Ted identifies that the absence of an indispensable party threatens to bring about inconsistent judgments, which he has done. Ted should not be expected to (1) identify with any degree of certainty the claims Costas might bring against him or (2) accept Balagiannis' summaries regarding what he "more recently...contends" happened to the deposit.[5] The argument that Ted could resolve the threat of inconsistent judgments by filing an interpleader claim in state court is a red herring because Ted would face the same problems haling Costas into court in that forum as Balagiannis does here and, in any event, it is not Defendant's responsibility to fix Balagiannis' inherently flawed claim for him by expanding the litigation.

       3.     Balagiannis Presents a Limited Justification for Allowing the Action to Proceed in "Equity and Good Conscience"

The argument that Balagiannis "may" be deprived of a remedy if he is forced to pursue Costas in a Greek forum is severely underdeveloped because it assumes two significant jurisdictional points and, implicitly, one substantive one: (1) Balagiannis could not sue Ted

---

[5] Balagiannis cites ¶21 of the Complaint to support the following statement: "Ted has testified under oath that he does not have the money, but instead transferred it to Costas in 2003." In fact, paragraph 21 of the Complaint reads as follows: "[m]ore recently, [Ted] now contends that he does not have possession of the $3,700,000, that upon those funds in October of 2003 he immediately transferred them to Costas Mavrakis and that he has no obligation to return that amount to Mr. Balagiannis." Even assuming this summary is accurate, it is obviously possible that Ted could have transferred the sum to Costas in October 2003 and not owe Balagiannis anything but still face a claim from Costas because the early transfer did not eliminate the parties' fluid legal obligations to one another.

170266v1             12

"anywhere" if this Court cannot exercise diversity jurisdiction; (2) Ted is not subject to the jurisdiction of any Greek court; and (3) Balagiannis would be deprived of a remedy if he could not pursue a claim against Ted in this Court. Balagiannis may desire to pursue his remedy in this forum without Costas but being denied that opportunity hardly deprives him of a remedy.

    4.    **Balagiannis Agrees that If Costas Must Be Named in the Lawsuit the <u>Court will be Divested of Subject Matter Jurisdiction</u>**

Balagiannis acknowledges that Defendant "correctly notes that joining Costas as a party to this action would defeat the Court's diversity jurisdiction..." Response at 4. Thus, if the Court concludes that Costas is an indispensable party and, after applying the equitable factors, finds that the action should not proceed without him, Defendant requests that the matter be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Defendant Theodore Mavrakis, pursuant to Fed. R. Civ. P. 9 and Fed. R. Civ. P. 12, respectfully moves this Court: (1) to dismiss Counts II, III and IV of the pending complaint; and (2) for such further relief as is just and proper.

                                                     Respectfully Submitted,
                                                     ***THEODORE MAVRAKIS***

                                                     /s/ Bruce N. Menkes
                                                     One of his Attorneys

Bruce N. Menkes
John D. Fitzpatrick
Lindsay H. LaVine
**MANDELL MENKES LLC**
333 West Wacker Drive, Suite 300
Chicago, Illinois 60606
(312) 251-1000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused to be served a true and correct copy of ***Defendant Theodore Mavrakis' Reply In Support of His Motion to Dismiss Counts II, III and IV of Plaintiff's Complaint*** to be served electronically with the Clerk of the Court of Illinois, Northern District, Eastern Division, and the same being accomplished pursuant to CM/ECF on:

>John M. Heaphy
>George N. Vurdelja, Jr.
>Harrison & Held
>333 W. Wacker Drive, Suite 1700
>Chicago, Illinois 60606
>Attorneys for Balagiannis

this 5th day of June, 2008.

By:   /s/ John D. Fitzpatrick
       One of his Attorneys