IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLAS BALAGIANNIS and RESERVE HOTELS PTY LIMITED, As Trustee for the NBF TRUST,<br><br>                    Plaintiffs,<br><br>          v.<br><br>THEODORE MAVRAKIS,<br><br>                    Defendant. | Case No. 08 C 943<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Nicolas Balagiannis and Reserve Hotels Pty Limited as trustee for the NBF Trust (hereinafter, "Reserve") filed suit against Theodore Mavrakis and Costas Mavrakis.  For jurisdictional reasons, Plaintiffs have voluntarily dismissed their claims against Costas Mavrakis (hereinafter, "Costas"), leaving only the breach of guaranty, promissory estoppel, and fraud claims pending against Theodore Mavrakis (hereinafter, "Ted").  Defendant now moves to dismiss these counts, pursuant to Rules 12(b)(6) and 12(b)(7).  For the reasons stated herein, Defendant's Motion to Dismiss is **granted in part** and **denied in part**.

## I.  FACTS

The Complaint in this case narrates a story of Greek casinos, shifting money, broken promises, and outright lies, all intended to defraud Plaintiffs of the roughly $4.5 million they desired to invest in Theros Gaming International, Inc. ("Theros").  In ruling on

Defendant's Motion to Dismiss, the Court accepts the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the Plaintiffs. *See Brown v. Budz*, 398 F.3d 904, 908 (7th Cir., 2005). However, the Court need not accept legal conclusions or unsupported inferences of fact. *See County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 818 (7th Cir., 2006). Nor is the Court required to accept the allegations of the complaint when an attached written instrument is to the contrary. *See Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F.Supp.2d 702, 707 (N.D. Ill., 2007).

According to the Complaint, both Ted and Costas Mavrakis were shareholders in Theros, an Illinois corporation formed to own and operate a Greek casino. In 2003, Ted reached an agreement to sell his approximately 43% interest in Theros to a third party, but Costas asserted his right of first refusal to purchase the stock. In order to exercise that right of first refusal, Costas was required to deposit into escrow $4 million in cash, a promissory note for an additional $5 million, and a release of claims against Ted signed by the remaining shareholder, Mike Rose. In order to secure the necessary funds, Costas entered into an agreement with Mr. Balagiannis ("Balagiannis") (who was acting on behalf of Reserve) on June 9, 2003, whereby Balagiannis would advance to Costas the $4 million in cash needed to complete the stock purchase and lend Costas an additional $500,000 to cover legal fees in an unrelated suit involving the company. Costas, in turn, agreed to sell a 34%

- 2 -

interest in Theros to Balagiannis for a total cost of $6,954,530,
with the $4 million advance being counted toward the purchase price.
In accordance with the agreement, Balagiannis and Reserve wired $3.7
million to the escrow account and the remaining $800,000 directly to
Costas.

Costas never deposited the promissory note or release into
escrow, however, and the stock purchase was never executed. Instead,
even though they both knew that the money in escrow was a loan from
Mr. Balagiannis, at sometime in late October 2003, Ted and Costas
transferred the money out of escrow and into an account for Ted
located in Greece. Since that time, both Ted and Costas have
repeatedly told Balagiannis that the funds are being held as earnest
money to insure that Costas does not waive his right to purchase the
stock, even though Ted's stock was sold to a third party in 2004.

Plaintiffs also attach two (translated) letters to their
Complaint. The first, sent by Ted to Mr. Balagiannis on October 22,
2003, states in its entirety:

> I hereby affirm that your funds (USD 4,000,000)
> shall not be at risk in any case. As a seller
> of the stock shares, I am also giving you my
> personal guarantee. On the other hand, if you
> change your mind, for any reason, I will gladly
> purchase, myself, your rights at the same
> consideration.

The second letter, sent by Ted to Costas on March 31, 2007 and carbon
copied to Balagiannis, affirms that Ted is holding money in a
personal account which constitutes a down payment on a purchase of
his shares and promises that Ted will accept Costas's right of

purchase if the sale to the third party is voided. The letter further states that if Costas wishes to withdraw from the agreement, Costas should notify Ted of that fact in writing, and Ted will then reimburse the funds he is holding.

Plaintiffs' demand for payment from Defendant was refused, and this suit followed.

## II.  **ANALYSIS**

A Motion to Dismiss under Rule 12(b)(6) is designed only to test the sufficiency of the Complaint, not to decide the underlying merits of the case. *See Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037, 1039 (7th Cir., 1998). Therefore, a plaintiff need only describe his claim in sufficient detail to "plausibly suggest that the plaintiff has a right to relief" and to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir., 2007). Although mere vagueness or lack of detail will not compel dismissal, *see Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir., 1985), the complaint must allege facts, either directly or inferentially, which set forth the essential elements of the cause of action. *See Looper Maintenance Service Inc. v. City of Indianapolis*, 197 F.3d 908, 911 (7th Cir., 1999).

### A.  Count II: Breach of Guaranty

Both parties agree on a common definition for a personal guaranty under Illinois law: "an agreement by one or more parties to answer to another for the debt or obligation of a third party."

- 4 -

*Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill.App.3d 605, 620 (1st Dist., 2007). Yet, in their response brief, Plaintiffs characterize Ted's alleged promise not as a guarantee to fulfill the obligations of Costas under the original agreement, but as a separate and independent promise by Ted to return the $4 million and insure that the money will not be at risk. As such, the Defendant seems to be correct that the document simply is not a personal guaranty as defined by Illinois law. Nevertheless, the independent promise alleged by Plaintiffs could lead to a valid cause of action for breach of contract, and the Court will not dismiss a complaint merely because it fails to allege the proper legal theory. *See Bartholet v. Reishauser A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir., 1992).

However construed, either as a breach of guaranty or breach of contract, Count II still must be dismissed if it fails to allege the necessary element of consideration. *See Van der Molen v. Washington Mut. Finance Inc.*, 359 Ill.App.3d 813, 824 (1st Dist., 2005) (dismissal of breach of contract claim proper where complaint fails to allege consideration); *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill.App.3d 1019, 1029 (1st Dist., 2007) (where guaranty is executed after and apart from the underlying agreement, new consideration is necessary). In this case, the complaint is entirely silent as to any consideration for Ted's October 22, 2003 letter of "guaranty." It is only in their response brief that Plaintiffs now allege that the funds could not be released from the escrow account without Balagiannis's consent and that Ted provided

- 5 -

the letter of "personal guaranty" in order to induce such consent. Although Plaintiffs are permitted to assert additional consistent facts in responding to the motion to dismiss, *see Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 439 (7th Cir., 1994), the arguable inconsistency between the new allegations and the complaint are sufficient enough that the Court will indulge Defendant's concern that "this claim is a moving target." Dismissal of Count II without prejudice to the filing of an amended complaint will allow Plaintiffs to more clearly state their cause of action and provide Defendant with fairer notice of the claim against him.

## B.  Count III: Promissory Estoppel

The parties again agree on the relevant law in Illinois.  To state a claim of promissory estoppel, the complaint must allege (1) an unambiguous promise to plaintiffs; (2) reliance by plaintiff on the promise; (3) that plaintiffs' reliance was expected and foreseeable by defendant; and (4) that plaintiffs relied on the promise to their detriment. *See Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 677 (7th Cir., 2005). Defendant argues that the March 31, 2007 letter upon which Plaintiffs base their claim makes a promise to return the money only *to Costas*, not Plaintiffs, and that any reliance by Plaintiffs on that letter would be unreasonable as a matter of law.

A fair and straightforward reading of the complaint does seem to indicate that Plaintiffs' promissory estoppel claim is based solely upon Ted's March 31, 2007 letter, in which he promises return of the

- 6 -

funds *to Costas*, and does not appear to make any unambiguous promise *to Plaintiffs*, as required for a successful promissory estoppel claim. However, faced with such an argument, Plaintiffs respond that Ted made an additional unambiguous promise to return the funds directly to Plaintiffs, separate and apart from the March 31, 2007 letter to Costas. While Defendant may be right to insist that such a promise does not fairly appear on the face of the complaint, he fails to explain why this additional allegation, new as it may be, is inconsistent with the facts currently pled in the complaint and unfit for inclusion upon Plaintiffs' response to the motion to dismiss. (Of course, should Plaintiffs choose to file an amended complaint, the allegation of a separate promise directly to Plaintiffs should be included clearly on the face of the new complaint.)

Given Plaintiffs' allegation that Ted promised to return the money directly to Balagiannis if the stock purchase did not go through, reliance upon such a promise seems both reasonable and expected. And although Ted argues elsewhere that Plaintiffs' delay in instituting proceedings to recover the funds was not detrimental, the Court must disagree. A year-long delay in recovering funds, which have already been tied up for nearly four years, leads to many ready inferences of detriment. *See, e.g., Gerson Elec. Const. Co. v. Honeywell, Inc.*, 117 Ill.App.3d 309, 312-13 (1st Dist., 1983) (allowing recovery of lost profits in promissory estoppel action). Further, at the time of the promise, and Plaintiffs' decision not to seek immediate recovery of the funds, Plaintiffs may have had a

clearer idea of where or how to regain the funds, and from whom. Indeed, the mere fact that Defendant subsequently refused to return the money upon demand by Plaintiffs, thus necessitating the current action, may be detriment enough. *Cf. In re Corrigan*, 2003 WL 261919, at *16 (Bankr. N.D. Ill., Feb. 6, 2003) (finding creditor's reliance upon statements of debtor detrimental where creditor forebore immediate collection of loan, despite the fact that creditor was able to recover the full amount owed in the instant proceeding). Plaintiffs have alleged the necessary elements of promissory estoppel and Count III will not be dismissed.

### C.  Count IV: Fraud

In alleging fraud, Plaintiffs are required not only to state the essential elements of their claim, but must do so with particularity, setting forth the time, place, substance, method, and speaker of the alleged misrepresentations. *See* FED. R. CIV. P. 9(b); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir., 1990).  The general allegation under count IV of the complaint that "during the period October 2003 through March 31, 2007," Ted and Costas "repeatedly" misrepresented the location and continued purpose of the $3.7 million advance borders on the type of blanket allegations of which Defendant complains and is insufficient under Rule 9(b).  However, Count IV expressly incorporates the previous allegations of the complaint, at least some of which set forth the alleged misrepresentations with the required level of detail.  Defendant is correct that Ted's October 22, 2003 letter, in which Plaintiffs allege that Ted lied

merely about his intent to guarantee the safety of Balagiannis'
funds, does not support an allegation of fraud. *See People ex rel.
Peters v. Murphy-Knight*, 248 Ill.App.3d 382, 387 (1st Dist., 1993)
(even a false promise of future conduct with no current intent to
fulfill the promise does not constitute fraud). However, the
complaint also details the time, method, content and speaker of Ted's
March 31, 2007 letter, in which Ted makes an affirmative, and
allegedly false, statement of fact (*i.e.*, that he continued to hold
the $3.7 million as a deposit on the purchase of his stock).
Plaintiffs clearly allege that this statement was false, that Ted
knew it to be false at that time of his making it, that Ted intended
Plaintiffs to rely on his false representation, and that Plaintiffs
did reasonably rely on the statement to their detriment. Such
allegations sufficiently state an action for common law fraud. *See
Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570,
574 (7th Cir., 2001). Although Defendant argues that mere delay of
suit is not detrimental, the Court has already demonstrated the
sufficiency of Plaintiffs' allegation in reviewing the promissory
estoppel claim. Nor does Ted's March 31, 2007 letter promising to
reimburse the funds *to Costas* make Plaintiffs reliance and delay of
suit unreasonable, given Plaintiffs' new allegation that Ted made a
simultaneous oral promise to return the money directly to
Balagiannis. Therefore, Count IV of the complaint must be sustained.
However, to the extent that Plaintiffs intend to rely on any further
misrepresentations by Ted, Plaintiffs must set them forth with

- 9 -

further specificity in an amended complaint, providing sufficient detail of their time, content, and method, such that Defendant will be able to form an intelligent responsive pleading. *See In re VMS Securities Litigation*, 752 F.Supp. 1373, 1391 (N.D. Ill., 1990).

### D.   Rule 12(b)(7): Necessary and Indispensable Party

Under Rule 19(a), a party is necessary if that party must be present to (A) accord complete relief among the existing parties, or (B) protect either its own interests or protect an existing party from a substantial risk of double, multiple, or otherwise inconsistent obligations. *See* FED. R. CIV. P. 19(a)(1); *Boulevard Bank Nat. Ass'n v. Philips Medical Systems Intern. B.V.*, 15 F.3d 1419, 1422 (7th Cir., 1994).  If joinder of a necessary party is not feasible, the Court must then consider the factors listed in Rule 19(b) and determine whether, "in equity and good conscience," the action should proceed among the existing parties or be dismissed. FED. R. CIV. P. 19(b).

Defendant argues that Costas must be a party to this action in order for Costas to protect both his own interests and to prevent Ted from being subject to double liability or inconsistent judgments. Plaintiffs agree that joining Costas back into this action would divest this Court of jurisdiction, but argue that Costas is neither necessary nor indispensable.  Though it is difficult to accurately judge the ultimate resolution of this action or the likelihood of future suit against Ted, particularly at this early stage of the case, the Court attempts to decide Defendant's Rule 12(b)(7) motion

based upon a pragmatic review of the case and the harms threatened. *See Choi v. Chase Manhattan Mortg. Co.*, 63 F.Supp.2d 874, 880 (N.D. Ill., 1999). Therefore, the above rulings on the scope and nature of Plaintiffs' claims necessarily inform the Court's decision as to the necessity or indispensability of Costas's presence in this suit.

### 1. *Rule 19(a): Necessary Party*

Because Plaintiffs' "breach of guaranty" claim appears to allege a promise separate and distinct from any obligations of Costas under the original agreement, a decision as to the validity of Costas's underlying debt would seem unnecessary to resolution of this suit. Therefore, it is unclear what interest of Costas would be prejudiced by his absence from this case. Nor is it clear how Costas could be bound by this Court's interpretations of any documents which *do* touch upon his rights or obligations. Although Defendant correctly cites the elements of *res judicata*, he fails to demonstrate how Costas is in sufficient privity with Ted to prevent Costas from safeguarding his own rights in a subsequent suit. For the purposes of *res judicata*, privity "is a descriptive term for designating those with a sufficiently close identity of interests," and "the interests of a principal and a guarantor are not clearly aligned." *In the Matter of L & S Industries, Inc.*, 989 F.2d 929, 932, 935 (7th Cir., 1993). Nor is it likely that a Court unable to exercise jurisdiction over Costas (such as this Court) will be able to preclude him from instituting future litigation. *Cf. Dale v. Frank*, 1989 WL 135057, at *2-3 (N.D. Ill., Oct. 31, 1989) (*res judicata* inapplicable where prior tribunal

- 11 -

lacked jurisdiction over claimant and therefore did not offer the party an effective opportunity to defend himself).

Prejudice to Ted is equally unlikely. Costas has not actively claimed an interest in the subject of this litigation, as an absent party typically must do under Rule 19(a), *see Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 483 (7th Cir., 2001), and given the complaint's allegation that Ted transferred the money to Costas sometime in 2003, it is unclear why, or under what theory, Costas would attempt to bring a subsequent suit against Ted. To the extent Ted insists that it is at least possible that he could be found liable to both Plaintiffs and Costas on the basis of the March 31, 2007 letter, the risk of such double liability cannot be considered substantial. Given Plaintiffs' new allegation that Ted made a separate oral promise to return the funds directly to Plaintiffs, it is much more likely that any recovery by Plaintiffs in this case would come from that second oral promise, not the March 31, 2007 letter. Nor can Ted have a substantial concern of incurring double liability on the separate oral promise, which does not appear to define the rights or liabilities of Costas, and upon which Costas therefore could not sue. *Cf. Davis Co.*, 268 F.3d at 484-85. Of course, to the extent Ted simply made two separate promises, both of which he may be called on to fulfill, he is not thereby able to escape defense of the present suit. *See id.* at 485. Under Rule 19(a), Costas cannot be considered a necessary party to this suit.

## 2. *Rule 19(b): Indispensable Party*

Even if the Court were to conclude that Costas is, in fact, a necessary party, the Court would find continuance of the suit in his absence more appropriate than dismissal of Plaintiffs' complaint. Even assuming Ted and Costas might be prejudiced by continuing this suit in Costas's absence, and assuming also that no measures could be taken to lessen or avoid such prejudice, the final two factors of Rule 19(b) would persuade the Court against dismissal of this action. A judgment rendered by this Court in Costas's absence will still be adequate, and Plaintiffs face the possibility of having no other forum in which they could press their claims against Ted if this action were dismissed. According to Plaintiffs, if Costas is deemed an indispensable party, the joinder of Costas will prevent jurisdiction in the United States and the forum selection clause of the original agreement will require the suit to proceed in Athens, Greece. If Ted, in turn, is not subject to jurisdiction in Greece, then dismissal of this action would leave Plaintiffs with no forum in which to present their claims against Ted. While Defendant contends that Plaintiffs' argument is "severely underdeveloped," Ted declines to admit that he is, in fact, subject to suit in Greece and fails to further develop the existence of other adequate remedies for Plaintiffs to pursue. This potential absence of an alternative forum is a weighty consideration, and it justifies the Court in proceeding with this action rather than dismissing it. *See Pasco Intern. (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501 n.9 (7th Cir., 1980); *American Home Assurance Co. v. Babcock & Wilcox Co.*, 2007 WL

4299847, at *2 (E.D.N.Y., Dec. 6, 2007) ("As a general rule, courts prefer to avoid dismissing the action; thus very few cases should be terminated due to the absence of non-diverse parties unless . . . nonjoinder makes just resolution of the action *impossible*.") (emphasis added).

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the Court finds:

1.  That Costas Mavrakis is neither a necessary nor indispensable party to this litigation, and therefore, Defendant's Rule 12(b)(7) Motion to Dismiss is **denied;**

2.  The Court further finds that Plaintiffs have narrated sufficient facts, both through their Complaint and their Brief in Response to the Motion to Dismiss, to state a claim for relief. Therefore, the Rule 12(b)(6) Motion to Dismiss is denied as to Counts III and IV; and

3.  The Court **grants** the Motion to Dismiss with regard to Count II, and allows Plaintiffs leave to file an Amended Complaint, so that Plaintiffs might state this count, and their other claims, with further clarity and consistency.

**IT IS SO ORDERED.**

_____
    Harry D. Leinenweber, Judge
    United States District Court

DATE: August 5, 2008

- 14 -