IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| NICOLAS BALAGIANNIS and<br>RESERVE HOTELS PTY LIMITED<br>As trustee for the NBF TRUST<br><br>　　　　　　Plaintiffs,<br>　v.<br><br>THEODORE MAVRAKIS<br><br>　　　　　　Defendant. | Case No.  08 C 943<br><br>Judge Leinenweber<br><br>Magistrate Judge Brown |

**FIRST AMENDED COMPLAINT**

Plaintiffs Nicolas Balagiannis ("Mr. Balagiannis") and Reserve Hotels Pty Limited as trustee for the NBF Trust ("Reserve"), by their undersigned attorneys, complains of Defendant Theodore Mavrakis ("Ted Mavrakis") as follows:

**Parties**

1.　Mr. Balagiannis is an individual who currently resides in Australia, is a citizen of Australia and is the sole director of Reserve.

2.　Reserve is a company organized under the laws of Australia.

3.　Ted Mavrakis is an individual who currently resides in 36 Park Lane, Golf, Illinois, 60029 and is a citizen of Illinois.

4.　Costas Mavrakis, who is not a party to this case, is Ted Mavarkis's brother and he currently resides in Patras, Greece and is a citizen of Illinois.

**Jurisdiction and Venue**

5.　This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(2) in that it is a dispute between citizens of the state of Illinois and citizens of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a) in that Ted Mavrakis resides in this district and a substantial portion of the events giving rise to this claim took place in this district.

## General Allegations

7.     In 2003 Ted Mavrakis, and Costas Mavrakis, each held equity interests in Theros Gaming International, Inc., an Illinois corporation ("Theros"). The main asset of Theros was a casino located in Greece.

8.     At that time there was litigation pending regarding Theros, the interest held in that company by Ted and Costas Mavrakis and a third party's claim that he had a right to purchase a portion of the stock of Theros.

9.     In 2003, Ted Mavrakis had allegedly agreed to sell his interest in Theros to that third party for approximately $9,000,000, $4,000,000 of which was to be paid in cash at closing and the remaining $5,000,000 was to be paid pursuant to a note. Following that agreement, Costas Mavrakis asserted that, pursuant to the Theros shareholder agreement, he had a right of first refusal with regard to the stock that Ted Mavrakis was selling.

10.    In order to comply with his obligations under that right of first refusal, Costas Mavrakis was required to tender to Ted Mavrakis in payment for Ted Mavrakis's stock (1) $4 million in cash; (2) a promissory note payable to Ted Mavrakis in the amount of $5 million (the "Promissory Note"); and (3) a release from Mike Rose, another shareholder in Theros, of any claims against Ted Mavrakis (the "Release"). Upon receipt of that consideration, Ted Mavrakis was then to transfer his stock in Theros to Costas Mavrakis.

11.    The closing was to take place in Chicago, Illinois through an escrow held by Chicago Title & Trust Company in Chicago, Illinois. The terms of the escrow were that Costas Mavrakis

would deposit the $4 million in cash, the Promissory Note and the Release in the escrow and Ted Mavrakis would deposit his shares of Theros in the escrow.[1] When all required items had been deposited, then the escrow agent would distribute the stock to Costas Mavrakis and the cash, note and release to Ted Mavrakis.

12. Costas Mavrakis apparently did not have the $4 million available to deposit in the escrow and so Costas Mavrakis entered in to the following agreement with Mr. Balagiannis, who was acting on behalf of Reserve: (1) Mr. Balagiannis would advance to Costas Mavrakis $4 million to close the transaction with Ted Mavrakis and would loan Costas Mavrakis $500,000 to cover legal costs to date; (2) Costas Mavrakis would, after closing with Ted Mavrakis, sell to Mr. Balagiannis approximately one-third of the stock in Theros; and (3) the $4 million advance would be applied against the purchase price Mr. Balagiannis was to pay for that one-third interest and the $500,000 loan would be repaid in 2006 (the "Stock Purchase and Loan Agreement"). A copy of that agreement and a translation is attached hereto as Collective Exhibit A.

13. Pursuant to that agreement, by wire transfers beginning on June 6, 2003 and ending on September 1, 2003, Mr. Balagiannis and Reserve wired over $800,000 to Costas Mavrakis and $3.7 million directly to the escrow. Rather than depositing the $300,000 in the escrow with Ted Mavrakis, Costas Mavrakis apparently used the entire $800,000 to pay personal expenses, rather than depositing that amount in the escrow or using it to pay legal fees as he had agreed. However, Costas has stated under oath that he provided the additional $300,000 to Ted Mavrakis by check.

14. At that time, Ted Mavrakis knew that Mr. Balagiannis had advanced the money to Costas Mavrakis, a portion of which was deposited in the escrow as part of a transaction pursuant to

---

[1] The escrow actually refers to Ted Mavrakis depositing the release in the escrow, but that appears to be a typographical error.

3

which Mr. Balagiannis was going to acquire an interest in Theros. In fact, the attorney for Costas Mavrakis acknowledged that, if the transaction contemplated by the terms of the escrow was not completed, then the funds could not be released from the escrow without the written permission of Mr. Balagiannis' attorney, Mr. Grekos. A copy of the agreement is attached hereto as Exhibit D.

15. Ultimately, Costas Mavrakis did not deposit the Promissory Note or the Release in escrow and Ted Mavrakis did not deposit the stock.

16. As a result Costas Mavrakis and Ted Mavrakis decided to terminate the escrow and distribute the funds to Ted Mavrakis, even though the purchase of the stock had not been completed.

17. Costas Mavrakis and Ted Mavrakis then requested that Mr. Balagiannis agree to release the funds in the escrow to Ted Mavrakis, which would be held as a deposit in order to allegedly preserve Costas Mavrakis' right to purchase the stock from Ted Mavrakis.

18. Mr. Grekos agreed to allow the funds to be distributed in return for an agreement by Ted Mavrakis to purchase Mr. Balagiannis rights at the same price paid by Mr. Balagiannis.

19. Pursuant to that agreement, on October 21, 2003, Mr. Grekos authorized the release of the funds in the escrow to Ted Mavrakis and on October 22, 2003, Mr. Grekos received Ted Mavrakis's written agreement (the "Contract") that Mr. Balagiannis funds would not be at risk and that Ted Mavrakis would purchase Mr. Balagiannis' rights for the same consideration Mr. Balagiannis had paid. A copy of that Agreement is attached hereto as Exhibit B.

20. On or about October 23, 2003, the Costas Mavrakis and Ted Mavrakis terminated the escrow, and even though Ted Mavrakis had not transferred the stock to Costas Mavrakis and even though Costas Mavrakis and Ted Mavrakis both knew that the money in the escrow was the

proceeds of a loan from Mr. Balagiannis to Costas Mavrakis to finance the purchase of Ted Mavrakis's stock, the money in the escrow was transferred by Costas Mavrakis and Ted Mavrakis to an account for Ted Mavrakis located in Greece. The funds were distributed to Ted Mavrakis on or about October 24, 2003.

21. A meeting was held in Athens Greece, following the distribution and prior to the end of 2003. The meeting was attended by Mr. Balagiannis, Mr. Grekos, Mr. Katserelis, Costas Mavrakis and Ted Mavrakis. During that meeting Ted Mavrakis again represented that he would guaranty the return of the funds to Mr. Balagiannis and would repurchase Mr. Balagiannis's rights if Mr. Balagiannis so requested.

22. Since that time both Costas Mavrakis and Ted Mavrakis have told Mr. Balagiannis's representatives that this money is being held as earnest money to insure that Costas Mavrakis does not waive his right to purchase the stock from Ted Mavrakis pursuant to his right of first refusal. Costas Mavrakis and Ted Mavrakis have continued to make these representations through 2007, even though Ted Mavrakis's stock was sold to a third party in 2004.

23. On February 2, 2007, Mr. Katserelis sent a letter to Ted Mavrakis in which Mr. Katserelis confirmed that Ted Mavrakis had represented in late 2003 that he was holding the funds and that he would return those funds upon appropriate notification. Mr. Kateserlis then went on to demand return of those funds.

24. On March 31, 2007, apparently in response to Mr. Katserelis's request, Ted Mavrakis asserted that he continued to hold the $3,700,000 as a deposit on the purchase of his stock and that he would go through with that sale if the sale to the third party was ever cancelled or that he would return the funds being held if the agreement by Costas Mavrakis to purchase Ted

5

Mavrakis' stock was cancelled.  A copy of that letter and the translation is attached hereto as Collective Exhibit C.

25.     Ted Mavrakis now contends that he does not have possession of the $3,700,000, that upon receiving those funds in October of 2003 he immediately transferred them to Costas Mavrakis and that he has no obligation to return that amount to Mr. Balagiannis.

## COUNT I
### (Breach of Contract)

22      Mr. Balagiannis and Reserve hereby incorporates by reference paragraphs 1 through 21of this complaint as if fully set forth herein.

23.     Ted Mavrakis entered into the Contract for and in consideration of Mr. Grekos' agreement, on behalf of Mr. Balagiannis, to release the funds in the escrow to Ted.

24.     Pursuant to the Contract, Ted Mavrakis agreed that he would guaranty the $4 million advanced to Costas Mavrakis by Mr. Balagiannis and Reserve to allow Costas Mavrakis to purchase Ted Mavrakis' stock and that, if requested, Ted Mavrakis would purchase Mr. Balagiannis/Reserves rights for $4 million.

25.     By letter dated June 20, 2007, Mr. Balagiannis demanded that Ted Mavrakis and/or Costas Mavrakis return the $4 million advance.  Costas Mavrakis did not return the funds and, in breach of his obligations under the Contract, Ted Mavrakis also has failed to pay that amount to Mr. Balagiannis.

26.     As direct and proximate result of Ted Mavrakis's breach of his obligations under the Contract, Mr. Balagiannis and Reserve have suffered damages in the amount of $4 million.

27.     Mr. Balagiannis and Reserve has performed all of his obligations under the Contract.

6

WHEREFORE, Mr. Balagiannis and Reserve hereby request that this court enter judgment in his favor and against Ted Mavrakis in the amount of $4,000,000 plus costs, interest and such other relief as this court deems just.

## COUNT II
### (Promissory Estoppel)

28. Mr. Balagiannis and Reserve hereby incorporates by reference paragraphs 1 through 27 of this complaint as if fully set forth herein.

29. Orally during the meeting in Athens, Greece in 2003, and in writing on October 22, 2003, Ted Mavrakis represented that Mr. Balagiannis's funds would not be jeopardized and that Ted Mavrakis would repurchase Mr. Balagiannis's rights for the same consideration paid by Mr. Balagiannis.

30. Ted Mavrakis made that promise intending that Mr. Balagiannis would rely on it and release the funds in the escrow to Ted Mavrakis.

31. On March 31, 2007, Ted Mavrakis represented that he held the $3.7 million withdrawn from the escrow and promised to pay that amount to Mr. Balagiannis if Mr. Balagiannis elected not to go through with his stock purchase transaction with Costas Mavrakis.

32. Ted Mavrakis made those promises intending that Mr. Balagiannis and Reserve would rely on that promise and would not pursue recovery of the $3.7 million at that time.

33. Mr. Balagiannis and Reserve in fact reasonably relied on Ted Mavrakis' promises to return the funds and released the funds to Ted Mavrakis and did not institute proceedings to recover the funds.

34. Ted Mavrakis has breached his promises to pay Mr. Balagiannis the $4 million for his rights and to return the $3.7 million dollars to Mr. Balagiannis or Reserve.

35. As a direct result of Ted Mavrakis's breach of his promise, Mr. Balagiannis and Reserve have suffered damages in the amount of at least $3.7 million.

WHEREFORE, Mr. Balagiannis and Reserve hereby requests that this court enter judgment in his favor and against Ted Mavrakis in the amount of at least $3,700,000 plus costs, interest and such other relief as this court deems just.

### COUNT III
### (Fraud)

39. Mr. Balagiannis and Reserve hereby incorporates by reference paragraphs 1 through 38 of this complaint as if fully set forth herein.

40. Ted Mavrakis and Costas Mavrakis, repeatedly represented to Mr. Balagiannis or his representatives, during the period October, 2003 through March 31, 2007, that the $3.7 million withdrawn from the escrow was to be held, and in fact was being held, as a deposit against the future purchase of stock in Theros owned by Ted Mavrakis.

41. Those representations set forth in paragraphs 40 were false and Ted Mavrakis knew they were false at the time they were made because Ted Mavrakis knew that (a) upon release of the funds from escrow, those funds were going to be immediately transferred from Ted Mavrakis to Costas Mavrakis and (b) during the period the funds were not being held as a deposit, but instead had spent by Costas Mavrakis and/or Ted Mavrakis shortly after those funds had been released to Ted Mavrakis on October 24, 2003.

42. Ted Mavrakis intended that Mr. Balagiannis and Reserve rely on these false representations of Costas Mavrakis and Ted Mavrakis, so that Mr. Balagiannis (a) would allow the funds in the escrow to be released to Ted Mavrakis and (b) would not seek to immediately recover the $3.7 million after those funds had been withdrawn from the escrow.

43. Mr. Balagiannis in fact reasonably relied on the false representations of Ted Mavrakis and Costas Mavrakis by, among other things, releasing the funds and delaying pursuit of the recovery of those funds until now.

44. Mr. Balagiannis has demanded that Ted Mavrakis return the funds that were distributed to Ted Mavrakis from the escrow, but Ted Mavrakis has failed to do so.

45. As a direct result of Mr. Balagiannis's reasonable reliance on the false representations made by Ted Mavrakis, Mr. Balagiannis and Reserve have suffered damages in the amount of $3.7 million.

WHEREFORE, Mr. Balagiannis and Reserve hereby request that this court enter judgment in his favor and against Ted Mavrakis in the amount equal to:

A. $3,700,000 in compensatory damages;

B. $2,000,000 in punitive damages;

C. Mr. Balagiannis's costs incurred in this matter;

D. Prejudgment interest; and

E. Such other relief as this court deems just.

> Respectfully submitted,
> NICOLAS BALAGIANNIS and
> RESERVE HOTELS PTY LIMITED
> As trustee for the NBF TRUST
>
> By:   /S/ John M. Heaphy
>         One of their Attorneys

John M. Heaphy
George N. Vurdelja, Jr.
Harrison & Held
333 W. Wacker Drive, Suite 1700
Chicago, IL  60606
(312) 753-6160

9