## PRELIMINARY AGREEMENT OF EXTRA-CORPORATE AGREEMENT FOR THE SALE OF STOCK SHARES NOT LISTED IN THE STOCK MARKET

In Athens today, on 06/09/2003, between **Kostas Mavrakis**, father's name George, resident of Patra, Rio Street of Patra, and **Nicolas Balagiannis**, father's name Athanasios, resident of Glyfada of Attica, 2 Kiou Street,

the following were agreed upon and stipulated:

### 1.    PREFACE OF THE CONTRACT

1.1.    The company "Theros International Gaming Inc." (hereinafter the "Company") was incorporated on July 29, 1994, and is based in the county of Cook of the state of Illinois of the United States of America (USA). Its objective, as it is also concluded by its complex name, was the acquisition of the license for the incorporation, operation and utilization of the casinos of Thessalonica and/or Rhodes. For this objective, the Company submitted a bid to the Ministry of Tourism on June 26, 1995. Upon a relevant decision of rejection and many other events, the Company received, by a new decision of the Ministry of Tourism on June 3, 1996, a license from the Greek Government for the incorporation, operation and utilization of a casino in the prefecture of Ahaia (casino of Rio), pursuant to the provisions of Law 2206/19.4.1994, which was published in the Official Gazette number 17/15.1.96. For its activities in Greece, the Company established a branch in March of 1996 (Gazette 1289/28.3.96). The secondary issues for the granting of the casino license in the prefecture of Ahaia were regulated by

[initials]



EXHIBIT
A

the contract between the Greek Government and the Company, which was dated 08/01/96.

1.2    The composition of the capital stock of the Company upon its corporation was as follows: Charles W. Bidwill III 16.668%, Edward T. Duffy 8.334%, Linda M. Krol 8.334%, Lawrence W. Brown 8.334%, John R. O'Donnel 6.447625%, Kostas Mavrakis 13.30%, Michael J. Jacobson 6.447625%, Timothy Rand 5.43475%, Michael Rose 13.40% and Theodoros Mavrakis 13.30%. In March of 1997, the Mavrakis brothers, according to their own statement, acquired the stock shares of the other abovementioned shareholders with the exception of Michael Rose, thus, the percentage of capital stock belonging to Kostas Mavrakis rose to 43.6875% and the percentage belonging to Theodoros Mavrakis also rose to 43.6875%. From these percentages held by each of the Mavrakis brothers, only a percentage of 13.30 is registered under the name of each, while the remaining percentage is still registered under the names of their assignees due to the dispute that had then arisen between the Mavrakis brothers and the third shareholder, Michael Rose, who alleges that the purchase was done with funds of the Company and that was the reason he was asking that his participation in the said purchase is recognized by 1/3 or 20%. In regard to this issue, Mr. Mavrakis assumes the obligation to submit, within three months from today, an application for approval of the transfer to the Casino Commission.

1.3.    Within the framework of the legal dispute between the shareholder Theodoros Mavrakis and the third party Kostas Piladakis, the Court of Cook County, state of Illinois, with its decision dated on 03/18/2003, concluded that a sales contract had been executed between the parties for the sale of the stock shares of Theodoros Mavrakis to Kostas [initials]

Piladakis with the terms that are especially contained in the said Court decision. The same decision also determined that Kostas Mavrakis (first of the parties) has the preemptive right, on the basis of the agreement of shareholders dated on 11/16/96 between the original shareholders of the Company, that enables him, at his discretion, to acquire the stock shares of his brother, Theodoros Mavrakis, that are for sale under the same terms Mr. Kostas Piladakis can acquire the said stock shares. The first of the parties in the present contract states, with his declaration - letter dated on 04/16/2003, that he has already exercised the preemptive rights for the acquisition of all shares of his brother, Theodoros Mavrakis; that is, 4,748.553 stock shares of which the latter allegedly possesses upon the abovementioned transfers and which represent a percentage equal to 43.6875% of the entire capital stock, and Kostas Mavrakis declares and commits that he will transfer from the said percentage (43.6875%) a portion of it which shall represent 34% of the total capital stock to Nicolas Balagiannis under the following terms and conditions:

## TERMS OF THE CONTRACT

1.      The company "Theros International Gaming Inc.", holder of a license for the operation and utilization of the casino which operates in the city of Rio of the prefecture of Ahaia **should have no unpaid obligation** deriving from its contract with the Greek Government, since it has already performed the tasks provided in the second (b') phase of its contract with the Greek Government dated on 08/01/1996.
[initials]

Mr. Kostas Mavrakis is obliged to produce a <u>certification</u> from the Casino Commission to affirm that all his obligations that derive from the abovementioned contract have been fulfilled.

2.     **It should be affirmed that** a) the said Company has been audited for its taxes and has closed its books up to and until the year 2001. b) The tax burden and obligations of the Company, in the amount of approximately EUR 18 million, have been negotiated to be paid in installments, the payment of which (installments) and for the first year, upon the signing of the present contract, is personally guaranteed by Kostas Mavrakis with the collateralization of their stock shares that they hold today in the company Theros. In the case of failure to pay one of the installments within the said time period and in an amount of not less than, in any case, seven million Euros (EUR 7,000,000) until 08/31/2004, the present contract shall be deemed terminated for material reasons and the buyer shall be satisfied with the total number of stock shares that Mr. Mavrakis possesses in THEROS today and which are given to Nicolas Balagiannis as collateral. The present provision constitutes a penalty clause that is recognized as reasonable, considering the losses deriving from non-utilization of the capital (of the buyer) throughout this time period. Besides the above, any other tax obligation that may arise shall personally concern Mr. Kostas Mavrakis, who will be responsible for its repayment.

3.     It is hereby declared that the proceeds from any legal claims of the Company against third parties that are pending, and in the case that they are favorable, shall be provided to the Company and Mr. Nicolas Balagiannis shall be entitled to a percentage of 34% of said proceeds.
[initials]

4.    Legal claims of third parties against the Company which have not been resolved to this day shall exclusively burden Kostas Mavrakis.

5.    It is hereby agreed upon by Mr. Kostas Mavrakis and Mr. Nicolas Balagiannis to accept that the first transfers to the latter 34% of all stock shares of the Company from the shares which shall come into the possession of the first after the exercise of the abovementioned preemptive rights and in consideration of a total amount of USD 6,954,530, that is, USD 204,545 per share. Any tax imposed on good will of the abovementioned shares shall exclusively burden the seller (K. Mavrakis).

6.    However, in order to transfer the stock shares of Theodoros Mavrakis to Kostas Mavrakis upon exercise of the abovementioned preemptive right as it is also derived from the decision of the District Court of Cook County of Illinois of the United States of America dated 04/16/2003, in combination with the decision dated 03/18/2003, Kostas Mavrakis must pay:

- Legal expenses in the amount of USD 500,000.
- The amount of USD 4,000,000 upon the signing of the stock share transfer contract.
- The remaining amount of USD 5,000,000 over a time period of 20 months, in equal amount installments of USD 1,000,000 each, every four months beginning four months after the payment of the amount of USD 4,000,000.

[initials]

7.     Upon the signing of the present contract, Nicolas Balagiannis must pay to Kostas Mavrakis the amount of USD 500,000. In order to secure the said amount, Mr. Kostas Mavrakis shall provide a personal check of the same amount to Nicolas Balagiannis, which check shall have as its issuance date the date of the signing of the final sale agreement, on which date it shall be returned.

The signing of the final agreement shall take place at least 20 business days after Kostas Mavrakis delivers to the representatives of Nicolas Balagiannis the full file of the legal documents in regard to:

a) The claim of the shareholder Michael Rose against him and against his brother, Th. Mavrakis, for the recognition of his participation (of M. Rose) in the purchase of approximately 60% of the original stock shares (complaint, decision, course of the trial, current stage, prospects).

b) The claim of Mr. Mavrakis to void the sale of the shares of his brother, Th. Mavrakis, to Mr. Piladakis and the exercise of the option rights (sale contract, your application/petition, decision or decisions, position of Mr. Piladakis).

c) The appointment of a third party as administrator (petition and from whom, decision, current status).

d) Any dispute tried by the Greek courts in which the company Theros International was a litigant.

e) File with all the information regarding the granting of the license.

f) File with copies of any type of lease agreements to this day.

g) A file with the correspondence with the Casino Commission in regard to the contractual obligations of the licensed company to the State.

and

h) That the financial auditing for the same time period by an auditing company chosen by the buyer, Nicolas Balagiannis, has been completed.

[initials]

8.     Nicolas Balagiannis, immediately after the signing of the final agreement, shall deposit the amount of USD 4,000,000, an amount that also constitutes the first installment of the purchase price in order to acquire the abovementioned shares (43.6875%) of Theodoros Mavrakis by the privileged buyer, Kostas Mavrakis, to an escrow account, the final type of which shall be determined up until the time of the signing of the final agreement, as set forth in the abovementioned court decision. Kostas Mavrakis shall pay this amount to his brother, Theodoros Mavrakis, by depositing his shares in a similar escrow account. From these shares, Kostas Mavrakis shall transfer, upon acquisition, the part that represents 34% of the total capital stock in consideration of USD 6,954,530, that is, USD 204,545 for each unit of the Company (that is, 34% x 204,545 = 6,954,530).

9.     Nicolas Balagiannis shall pay, in addition to the abovementioned amounts (USD 500,000 + 4,000,000), the first two installments of USD 1,000,000 each per each four-month period, as well as USD 954,530 for the third installment, the remainder of which shall be paid by Kostas Mavrakis, that is, USD 45,470. For the fourth installment, Kostas Mavrakis shall pay USD 1,000,000 and another USD 1,000,000 for the fifth installment and for repayment of the total amount.

10.     It is agreed upon that the abovementioned remaining five installments of USD 1,000,000 each shall be paid from the funds of the Company and shall constitute responsibility of the parties according to the present contract in exchange for their [initials]

participation in future profits. That is, the first three installments of USD 1,000,000 shall be paid by the Company for the benefit of Mr. Nicolas Balagiannis in order for him to provide the amount for the acquisition of the shares, and the following two installments shall be paid for the benefit of Mr. K. Mavrakis for the same purpose.

11.    With the payment of the legal expenses, that is, the amount of USD 500,000, it is agreed upon that Nicolas Balagiannis immediately acquires the position of partner in the company "Theros" and he shall also be entitled to suggest and appoint two members of the five member Board of Directors of the Company, a legal consultant, a financial director - auditor, a person responsible for the surveillance cameras of the casino and a gaming technician. Also, the incorporation of a joint management company (50% each) is hereby agreed upon.

12.    The amount of USD 500,000, which shall initially be paid by Mr. Nicolas Balagiannis, shall be returned to him until the end of the year 2006 and after the repayment of the five (5) installments of USD 1,000,000 each.

13.    It is agreed upon that the General Director of the casino shall be jointly selected.

14.    It is agreed upon that for issues of major importance, such as those contained in Article 29, paragraph 3 of Law 2190/20, and **all that shall be added up to and until the signing** of the final agreement, issues such as the increase of the capital stock, etc., shall require the agreeing opinion of Nicolas Balagiannis and the abovementioned decisions [initials]

shall be made by unanimous agreement between Balagiannis - Mavrakis and not by majority. As far as decisions of minor importance, the consent of Nicolas Balagiannis shall be required.

15.   The management of the Company shall be performed by both Messrs Balagiannis – Mavrakis and by unanimous agreement.

16.   Up to and until the execution of the sale contract for the stock shares and until said stock shares come into the possession of Nicolas Balagiannis, the buyer (Nicolas Balagiannis) shall receive from Kostas Mavrakis the dividends that the latter will receive from the Company up to the amount of 34% of the total capital stock of the Company, which shall be paid as it applies to this day.

17.   In the case that the shareholder Michael Rose decides to sell his shares to Kostas Mavrakis, pursuant to the option rights of the latter, Kostas Mavrakis must, provided that Nicolas Balagiannis wishes so, exercise the option rights and, as far as the stock shares he will acquire, he hereby commits to transfer them to Nicolas Balagiannis in consideration equal to the amount paid to Michael Rose. If the paid amount is less, the transfer shall take place at that price.

18.   It is also agreed upon that if Kostas Mavrakis wishes to transfer his shares within a period of five years, a necessary condition thereof shall be the written consent of Nicolas Balagiannis. The same applies in the case that Nicolas Balagiannis wishes to [initials]

transfer his shares.

19.    Also, Kostas Mavrakis, shareholder of the lessee company of the hotel "PORTO RIO" with company name "Three Stars", shall be obliged to transfer a percentage of the stock shares of the said company and up to 49% on agreed upon consideration set in the amount of EUR 4,402,054 in the case that Nicolas Balagiannis expresses such an interest. In this case, Kostas Mavrakis must have taken care of all the obligations of the abovementioned Company and he also must have closed the books for the fiscal year prior to the transfer in order for the Company to be free of burdens.

20.    It is also agreed upon that in the time period up to the final transfer of 34% of the company "Theros International Gaming Inc." to Nicolas Balagiannis by Kostas Mavrakis, Kostas Mavrakis shall pledge to Nicolas Balagiannis the stock shares of the company "Three Stars" as a guarantee and shall also give him a personal check of an equal amount.

21.    It is also hereby agreed upon that if Nicolas Balagiannis acquires more than 34% of the stock shares plus 12% of the stock shares of Mike Rose, that is, 46% in total, then Kostas Mavrakis explicitly commits and shall be obliged to transfer an additional percentage of 3% of the stock shares of the Company at the price per percentage unit set forth in the present preliminary agreement so that as a result, Kostas Mavrakis possesses 51% and Nicolas Balagiannis possesses 49% of the stock shares of the company "Theros International Gaming Inc.".
[initials]

22.    It is hereby agreed upon that Nicolas Balagiannis has the right to withdraw from the agreement: a) If the financial figures of the company THEROS INTERNATIONAL GAMING Inc., upon financial auditing performed by Nicolas Balagiannis within 20 business days from the day following the signing of the present preliminary agreement, deviate by [more than] 5% from the figures stated on behalf of Kostas Mavrakis, and b) If other claims by third parties become known that had not been disclosed to the buyer and which deviate by more than 5% from those declared.

23.    It is agreed upon that after two months from the signing of the present contract and in the case of termination of the abovementioned agreement by any of the parties hereto, without material reason, the said party shall be obliged to pay USD 1,000,000 as a penalty clause.

The present contract shall constitute the basis for the final agreement, which is to be signed in the future, between the parties hereto or a company of the selection of Nicolas Balagiannis; additions or supplements may be made upon unanimous agreement.

24.    The competent courts for any dispute which may arise shall be the Courts of Athens.

Athens, *06/09/2003*

*THE PARTIES*

[signature]                    [signature]
*NICOLAOS BALAGIANNIS*        *MAVRAKIS, KOSTAS*

1

## ΠΡΟΣΥΜΦΩΝΟ ΕΞΩΕΤΑΙΡΙΚΗΣ ΣΥΜΦΩΝΙΑΣ ΠΩΛΗΣΗΣ ΜΕΤΟΧΩΝ ΜΗ ΕΙΣΗΓΜΕΝΩΝ ΣΤΟ ΧΡΗΜΑΤΙΣΤΗΡΙΟ

Στην Αθήνα σήμερα, την 9 – 6 – 2003 μεταξύ αφενός του **Κων/νου Μαυράκη** του Γεωργίου, κατοίκου Πατρών , οδός Ρίο- Πάτρας και αφετέρου του **Νικόλαου Μπαλαγιάννη** του Αθανασίου, κάτοικου Γλυφάδας Αττικής, οδός Κίου αρ. 2

συμφωνούνται και γίνονται αποδεκτά τα ακόλουθα:

## 1.   ΠΡΟΟΙΜΙΟ

1.1.   Η εταιρία "Theros International Gaming Inc." (εφεξής η Εταιρία) συστήθηκε στις 29 Ιουλίου του 1994 με έδρα το Illinois της Κομητείας Cook στις Ηνωμένες Πολιτείες Αμερικής ( ΗΠΑ). Σκοπός της, όπως προκύπτει και από το σύνθετο όνομά της, ήταν η απόκτηση της άδειας ίδρυσης, λειτουργίας και εκμετάλλευσης των καζίνο της Θεσσαλονίκης ή/και της Ρόδου. Για το σκοπό αυτό η Εταιρία υπέβαλε προσφορά στο διαγωνισμό του Υπουργείου Τουρισμού στις 26 Ιουνίου 1995. Κατόπιν αρνητικής σχετικής απόφασης και σειράς λοιπών γεγονότων, με νέα απόφαση του Υπουργού Τουρισμού στις 3 Ιουνίου 1996, η Εταιρία έλαβε άδεια του Ελληνικού Δημοσίου για την ίδρυση, λειτουργία και εκμετάλλευση καζίνο στο Νομό Αχαΐας (καζίνο του Ρίο), σύμφωνα με τις διατάξεις του Ν. 2206/19.4.1994, η οποία δημοσιεύθηκε στο ΦΕΚ 17/15.1.96. Η Εταιρία για τη δραστηριοποίησή της στην Ελλάδα ίδρυσε το Μάρτιο 1996 υποκατάστημα (ΦΕΚ 1289/28.3.96). Με την από 1.8.96 σύμβαση μεταξύ του Ελληνικού Δημοσίου και της εταιρίας ρυθμίστηκαν

2

τα επιμέρους ζητήματα της παραχώρησης της άδειας καζίνο στο νομό Αχαΐας.

1.2.    Η ποσοστιαία μετοχική σύνθεση της εταιρίας κατά την ίδρυση είχε ως εξής: Charles W. Bidwill III 16,668%, Edward T. Duffy 8,334%, Linda M. Krol 8,334%, Lawrence W. Brown 8,334%, John R. O' Donnel 6,447625%, Κώστας Μαυράκης 13,30%, Michael J. Jacobson 6,447625%, Timothy Rand 5,43475%, Michael Rose 13,40% και Θεόδωρος Μαυράκης 13,30%. Το Μάρτιο 1997 οι αδελφοί Μαυράκη, κατά δήλωσή τους, απέκτησαν τις μετοχές των υπολοίπων προαναφερθέντων μετόχων πλην του Michael Rose και έτσι το ποσοστό του Κων/νου Μαυράκη ανήλθε σε 43,6875% των μετοχών όπως επίσης και το ποσοστό του Θεόδωρου Μαυράκη ανήλθε σε ποσοστό 43,6875%. Από το ποσοστό αυτό, που κατέχει έκαστος εκ των αδελφών Μαυράκη, ποσοστό μόνο 13,30 είναι καταχωρημένο στο όνομα καθενός εξ αυτών , ενώ το υπόλοιπο ποσοστό, είναι ακόμη καταχωρημένο στα ονόματα των δικαιοπαρόχων τους λόγω της αρξαμένης τότε αντιδικίας μεταξύ των αδελφών Μαυράκη και του τρίτου μετόχου Michael Rose, ο οποίος ισχυρίζεται ότι η εξαγορά έγινε από κεφάλαια της εταιρίας και γι αυτό ζητά ν' αναγνωριστεί η συμμετοχή του σ' αυτή ( την εξαγορά) κατά το 1/3 ή το 20 % . Επ'αυτού ο κ.Μαυράκης αναλαμβάνει την υποχρέωση όπως εντός τριμήνου από τώρα υποβάλει αίτηση έγκρισης της μεταβίβασης στην επιτροπή Καζίνο.

1.3.    Στα πλαίσια δικαστικής διένεξης μεταξύ του μετόχου Θεόδωρου Μαυράκη και του τρίτου Κων/νου Πηλαδάκη το Δικαστήριο της Κομητείας Κουκ του Ιλλινόϊς με την από 18.3.2003 απόφασή του απεφάνθη, ότι έχει καταρτισθεί μεταξύ τούτων σύμβαση πώλησης των μετοχών του Θεόδωρου Μαυράκη προς τον Κων/νο Πηλαδάκη, με τους

3

όρους που αναφέρονται ειδικότερα στην εν λόγω δικαστική απόφαση. Η ίδια απόφαση επίσης ορίζει, ότι ο Κων/νος Μαυράκης (α' των συμβαλλομένων) έχει με βάση την από 16.11.96 συμφωνία μετόχων, που συνήφθη μεταξύ των αρχικών μετόχων της Εταιρίας, το δικαίωμα προτίμησης δυνάμενος να αποκτήσει εκείνος, εφόσον το επιθυμεί, τις προς πώληση μετοχές του αδελφού του Θεόδωρου Μαυράκη με τους ίδιους όρους, που μπορεί να αποκτήσει τις μετοχές αυτές ο Κω/νος Πηλαδάκης. Ο α' εκ των εις το παρόν συμβαλλομένων δηλώνει ότι με την από 16/4/2003 δήλωση - επιστολή του έχει ήδη ασκήσει το δικαίωμα προτίμησης για την απόκτηση του συνόλου των μετοχών του αδελφού του Θεόδωρου Μαυράκη, ήτοι 4.748.553 μετοχές, που ο τελευταίος φέρεται να κατέχει κατόπιν των προαναφερθεισών μεταβιβάσεων και οι οποίες αντιπροσωπεύουν ποσοστό ίσο με το 43,6875 % του συνόλου του μετοχικού κεφαλαίου και εξ αυτού του ποσοστού (43,6875 %) τμήμα του, που θα αντιπροσωπεύει το 34 % επίσης του συνολικού μετοχικού κεφαλαίου,  ο Κων/νος Μαυράκης δηλώνει και δεσμεύεται ότι θα μεταβιβάσει στον Νικόλαο Μπαλαγιάννη με τους παρακάτω όρους και προϋποθέσεις:


## ΟΡΟΙ ΣΥΜΒΑΣΗΣ

1. Η εταιρία "Theros International Gaming Inc.", κάτοχος της άδειας λειτουργίας και εκμετάλλευσης του Καζίνο που λειτουργεί στο Δήμο Ρίου του Ν. Αχαΐας, να μην έχει καμία ανεκπλήρωτη υποχρέωση που να πηγάζει από την σύμβασή της με το Ελληνικό Δημόσιο, καθότι έχει ήδη εκτελέσει και τα έργα που προβλέπονται στην β' φάση της από 1-8-1996 σύμβασης με το Ελληνικό Δημόσιο.

4

Ο κ. Κώστας Μαυράκης υποχρεούται όπως προσκομίσει <u>πιστοποίηση</u> από την Επιτροπή Καζίνο ότι έχουν εκπληρωθεί όλες οι υποχρεώσεις που πηγάζουν από την ανωτέρω σύμβαση.

**2.Να επιβεβαιωθεί α)** ότι η εν λόγω εταιρία έχει ελεγχθεί φορολογικά και έχει κλείσει τα βιβλία της έως και το έτος 2001. β) Οι φορολογικές επιβαρύνσεις και υποχρεώσεις της εταιρίας ότι ανέρχονται στο ποσό των 18 εκατομμυρίων Ευρώ περίπου ως έχει ρυθμιστεί η καταβολή τους σε δόσεις, την πληρωμή των οποίων ( δόσεων) και για τον πρώτο χρόνο από την υπογραφή της παρούσης εγγυάται και προσωπικά ο Κων/νος Μαυράκης με την ενεχυρίαση των μετόχων της κυριότητας τους σήμερα στην εταιρία Theros. Στην περίπτωση μη καταβολής μιας εκ των δόσεων της εν λόγω χρονικής περιόδου και σε κάθε περίπτωση ποσού όχι μικρότερου των επτά εκατομμυρίων ( 7.000.000) Ευρώ μέχρι 31-8-2004, τότε η παρούσα θεωρείται καταγγελθείσα για σπουδαίο λόγο και ο αγοραστής θα ικανοποιηθεί από το σύνολο των μετόχων, που κατέχει σήμερα στην THEROS ο κ.Μαυράκης και δίδονται ως ενέχυρο στον Νικ.Μπαλαγιάννη. Η παρούσα ρύθμιση αποτελεί ποινική ρήτρα που αναγνωρίζεται εύλογη, λαμβανομένης υπόψη της απώλειας εκ της εκμετάλλευσης των κεφαλαίων (του αγοραστή) κατ' αυτό το χρονικό διάστημα .

Πλέον αυτών οιαδήποτε φορολογική υποχρέωση προκύψει, αφορά προσωπικά τον κο Κώστα Μαυράκη , ο οποίος και θα επιβαρυνθεί την αποπληρωμή της.

**3.** Δια της παρούσης δηλώνεται ότι όποιες δικαστικές αξιώσεις της εταιρίας κατά τρίτων υφίστανται και ευδοκιμήσουν ,τα έσοδα εξ αυτών θα διατεθούν στην εταιρεία και δικαίωμα επ'αυτών σε ποσοστό ίσο με το 34% θα έχει και ο Νικ.Μπαλαγιάννης.

5

4. Δικαστικές αξιώσεις τρίτων που στρέφονται κατά της εταιρείας και δεν έχουν αναγγελθεί μέχρι τώρα θα βαρύνουν αποκλειστικά τον Κων/νο Μαυράκη .

5. Διά της παρούσης συμβάσεως ο κ. Κώστας Μαυράκης συμφωνεί και ο κος Νικόλαος Μπαλαγιάννης αποδέχεται να μεταβιβαστεί στον δεύτερο το 34 % επι του συνόλου των μετοχών της Εταιρίας ,από εκείνες τις μετοχές που θα περιέλθουν στην κατοχή του πρώτου στα πλαίσια της άσκησης του ως άνω δικαιώματος προτίμησης, αντί συμφωνηθέντος, συνολικού τιμήματος από 6.954.530 Δολάρια ΗΠΑ ήτοι 204.545 Δολάρια ΗΠΑ ανά μετοχή. Τυχόν φόρος υπεραξίας επί των ως άνω μετοχών βαρύνει εξ ολοκλήρου τον πωλητή (Κ.Μαυράκη).

6. Προκειμένου όμως να μεταβιβαστούν οι μετοχές του Θεόδωρου Μαυράκη , προς τον Κωνσταντίνο Μαυράκη, κατόπιν ασκήσεως του ανωτέρω δικαιώματος προτίμησης, όπως προκύπτει από την από 16/4/2003 σε συνδυασμό με την από 18/3/2003 απόφαση του Περιφερειακού Δικαστηρίου της Κομητείας Κούκ του Ιλινόϊς Ηνωμένων Πολιτειών Αμερικής ο Κων/νος Μαυράκης θα πρέπει να καταβάλει :

- Τα δικαστικά έξοδα τα οποία ανέρχονται στο ποσό των 500.000 Δολαρίων ΗΠΑ.

- Το ποσό των 4.000.000 Δολαρίων ΗΠΑ με την υπογραφή της σύμβασης μεταβίβασης μετοχών

- Τα υπόλοιπα 5.000.000 Δολάρια ΗΠΑ σε χρονικό διάστημα 20 μηνών, σε ισόποσες δόσεις του 1.000.000 Δολαρίων ΗΠΑ η κάθε μία, ανά τετράμηνο, αρχής γενομένης τέσσερις μήνες μετά την καταβολή των 4.000.000 Δολαρίων ΗΠΑ.

6

7. Με την υπογραφή του παρόντος ο κ. Νικόλαος Μπαλαγιάννης οφείλει να καταβάλει στον Κων/νο Μαυράκη το ποσό των 500.000 Δολλαρίων ΗΠΑ. Προς διασφάλιση του ποσού αυτού θα δοθεί ισόποση προσωπική επιταγή του Κωνσταντίνου Μαυράκη προς τον Νικόλαο Μπαλαγιάννη, η οποία, επιταγή, θα φέρει ημερομηνία έκδοσης την καταληκτική ημερομηνία υπογραφής του οριστικού συμφωνητικού πώλησης, οπότε και θα επιστραφεί.

Η υπογραφή του οριστικού συμφωνητικού θα γίνει μετά από 20 τουλάχιστον εργάσιμες ημέρες αφότου ο Κων/νος Μαυράκης παραδώσει στην πλευρά του Νικ.Μπαλαγιάννη πλήρη φάκελο δικογραφίας σχετικά:

α) με την αξίωση του μετόχου Michael Rose εναντίον του και κατά του αδελφού του Θ.Μαυράκη για την αναγνώριση και δικής του συμμετοχής (του M.Rose) στην εξαγορά ποσοστού 60% εκ των αρχικών μετόχων. (αγωγή, απόφαση, πορεία της δίκης ,σημερινό στάδιο, προοπτικές).

β) την αξίωση του κ.Μαυράκη, να ακυρωθεί η πώληση του μεριδίου του αδελφού του Θ.Μαυράκη προς τον κ.Πηλαδάκη και την άσκηση του δικαιώματος προτίμησης (σύμβαση πώλησης, αίτηση δική σας, απόφαση ή αποφάσεις ,θέσεις κ.Πηλαδάκη)

γ) με τον διορισμό τρίτου προσώπου ως διαχειριστή (αίτηση και από ποιον, απόφαση, σημερινή κατάσταση)

δ) οποιασδήποτε διαφοράς έχουν επιμεληθεί τα ελληνικά δικαστήρια με διάδικο την εταιρεία Theros International

ε) φάκελο με όλα τα στοιχεία παραχώρησης της άδειας

στ) φάκελο με αντίγραφα κάθε μορφής μίσθωσης που έγινε μέχρι σήμερα

ζ) φάκελο αλληλογραφίας με την επιτροπή καζίνο ως προς τις συμβατικές υποχρεώσεις έναντι της πολιτείας της αδειούχου εταιρείας και

η) να έχει ολοκληρωθεί στο ίδιο διάστημα ο οικονομικός έλεγχος από ελεγκτική εταιρεία της επιλογής του αγοραστή Νικ.Μπαλαγιάννη.

7

8. Ο Νικόλαος Μπαλαγιάννης αμέσως μετά την υπογραφή του οριστικού συμφωνητικού θα καταθέσει σε κλειστό δεσμευμένο λογαριασμό (escrow account) , η τελική μορφή του οποίου θα καθοριστεί μέχρι την υπογραφή του οριστικού συμφωνητικού, το ποσό των 4.000.000 Δολαρίων ΗΠΑ, ποσό που αποτελεί και την πρώτη δόση καταβολής του τμήματος προκειμένου να αποκτηθούν οι ανωτέρω μετοχές (43,6875 %) του Θεόδωρου Μαυράκη από τον προνομιούχο αγοραστή  Κώστα Μαυράκη, όπως ορίζεται στην προαναφερθείσα δικαστική απόφαση. Το ποσό αυτό ο Κώστας Μαυράκης θα το καταβάλει στον αδελφό του Θεόδωρο Μαυράκη, με την καταβολή υπ'αυτού σε αντίστοιχο escrow account των μετοχών του. Εκ των μετοχών αυτών ο Κώστας Μαυράκης θα μεταβιβάσει με την απόκτηση, το τμήμα που αντιπροσωπεύει το 34% του συνολικού μετοχικού κεφαλαίου, αντί του τιμήματος των 6.954.530 Δολαρίων ΗΠΑ, ήτοι 204.545 Δολάρια ΗΠΑ έκαστη μονάδα της Εταιρίας (ήτοι 34% x 204.545= 6.954.530).

9.  Ο Νικόλαος Μπαλαγιάννης πλέον των παραπάνω ποσών (500.000+4.000.000 $ USA), θα καταβάλει και τις δύο πρώτες δόσεις των 1.000.000 Δολαρίων ΗΠΑ εκάστη, ανά τετράμηνο, καθώς και 954.530 Δολάρια ΗΠΑ για την τρίτη δόση της οποίας ο Κώστας Μαυράκης θα καταβάλει το υπόλοιπο ήτοι 45.470 Δολάρια ΗΠΑ .Για την τέταρτη δόση , ο Κων/νος Μαυράκης θα καταβάλει 1.000.000 Δολάρια ΗΠΑ και επίσης 1.000.000 Δολάρια ΗΠΑ για την πέμπτη δόση, σε εξόφληση του συνολικού τιμήματος.

10. Συμφωνείται όπως οι ανωτέρω πέντε, υπόλοιπες, δόσεις ποσού 1.000.000 $ USA έκαστη θα καταβληθούν από το ταμείο της εταιρίας και θα αποτελούν μέρισμα των εδώ συμβαλλομένων έναντι συμμετοχής τους

8

επί των μελλοντικών κερδών. Δηλαδή οι τρεις πρώτες δόσεις ποσού ενός εκατομμυρίου Δολαρίων ΗΠΑ (1.000.000 $ USA) εκάστη θα καταβληθούν από την εταιρία για λογ/σμο του κ. Νικόλαου Μπαλαγιάννη, προκειμένου να διαθέσει το ποσό προς απόκτηση των μετοχών και ακολούθως οι υπόλοιπες δύο θα πληρωθούν για λογ/σμό του κ. Κ. Μαυράκη για τον ίδιο σκοπό.

11. Με την καταβολή των δικαστικών εξόδων, ήτοι του ποσού των 500.000 $ USA , συμφωνείται ο Νικόλαος Μπαλαγιάννης να υπεισέλθει αμέσως σε θέση εταίρου στην εταιρία "Theros " και πλέον αυτού να έχει την δυνατότητα να υποδείξει και να διορίσει δύο μέλη, στο πενταμελές διοικητικό συμβούλιο της εταιρίας , έναν νομικό σύμβουλο , έναν οικονομικό διευθυντή - ελεγκτή, έναν υπεύθυνο στις κάμερες του Καζίνο, έναν υπεύθυνο Τεχνικό Παιγνίων. Επίσης συμφωνείται και η σύσταση, από κοινού (50% έκαστος) εταιρείας management .

12. Το ποσό των 500.000 $ USA που θα καταβληθεί αρχικώς από τον κ. Νικόλαο Μπαλαγιάννη θα του επιστραφεί έως το τέλος του έτους 2006, μετά την αποπληρωμή των πέντε (5) δόσεων από 1.000.000 $ USA η κάθε μία.

13. Αναφορικά με τον Γενικό Διευθυντή του Καζίνο συμφωνείται όπως αυτός θα είναι κοινής αποδοχής.

14. Συμφωνείται ότι για θέματα ύψιστης σημασίας όπως αυτά που αναφέρονται στο άρθρο 29 παρ. 3 ν. 2190/20 και όσα θα συμπληρωθούν μέχρι και κατά την υπογραφή του οριστικού συμφωνητικού, αύξηση μετοχικού κεφαλαίου κ.α. θα απαιτείται και η σύμφωνη γνώμη του Νικόλαου Μπαλαγιάννη και οι ανωτέρω αποφάσεις θα λαμβάνονται κατ'

9

ομοφωνία Μπαλαγιάννη – Μαυράκη και όχι κατά πλειοψηφία. Στην λήψη των λοιπών αποφάσεων ήσσονος σημασίας θα απαιτείται η συγκατάθεση του Νικόλαου Μπαλαγιάννη.

15. To Management της εταιρίας θα ασκείται από κοινού από τους Μπαλαγιάννη – Μαυράκη και κατ' ομοφωνία.

16. Έως την εκτέλεση της καταρτησθισομένης σύμβασης πώλησης των μετοχών και έως ότου περιέλθουν αυτές στην κυριότητα του Νικόλαου Μπαλαγιάννη , ο αγοραστής (Νικόλαος Μπαλαγιάννης) θα εισπράττει από τον Κώστα Μαυράκη τα μερίσματα που θα λαμβάνει ο τελευταίος από την εταιρία μέχρι του ποσοστού του 34 % επι του συνόλου των μετοχών της εταιρίας , τα οποία θα καταβάλλονται ως προβλέπεται σήμερα.

17. Σε περίπτωση που ο εκ των μετόχων Michael Rose αποφασίσει να πωλήσει τις μετοχές του και απευθυνθεί προς τον Κων/νο Μαυράκη στα πλαίσια του δικαιώματος προτίμησης του τελευταίου , ο Κων/νος Μαυράκης οφείλει, εφόσον το επιθυμεί ο Νικ. Μπαλαγιάννης, να ασκήσει το δικαίωμα προτίμησης, τις δε μετοχές, που θα αποκτήσει δεσμεύεται να τις μεταβιβάσει έναντι ισόποσου ανταλλάγματος με το καταβληθέν στον Michael Rose, προς τον Νικ. Μπαλαγιάννη. Εάν το τίμημα είναι μικρότερο η μεταβίβαση θα γίνει σ'αυτή την τιμή.

18. Ακόμη συμφωνείται πως εάν θελήσει να μεταβιβάσει τις μετοχές του ο Κωνσταντίνος Μαυράκης εντός πενταετίας απαραίτητη προϋπόθεση αποτελεί η έγγραφη συναίνεση του Νικόλαου Μπαλαγιάννη. Το ίδιο

ισχύει και στην περίπτωση που θελήσει να μεταβιβάσει τις μετοχές του ο Νικ.Μπαλαγιάννης.

19. Επίσης δια του παρόντος ο Κώστας Μαυράκης μέτοχος της μισθώτριας του Ξενοδοχείου "PORTO RIO" Εταιρίας με την επωνυμία «Τρία Αστέρια » υποχρεούται εφόσον εκδηλώσει ενδιαφέρον ο Νίκος Μπαλαγιάννης ,όπως του μεταβιβάσει ποσοστό μετοχών της εν λόγω εταιρίας και μέχρι το 49% αντί συμφωνηθησομένου τιμήματος που ορίζεται στο ποσό των 4.402.054 ΕΥΡΩ. Στην περίπτωση αυτή ο Κων/νος Μαυράκης θα πρέπει εντός τριμήνου να έχει τακτοποιήσει όλες τις υποχρεώσεις της ανωτέρω εταιρίας καθώς και να έχει κλείσει βιβλία για την προηγούμενη της μεταβιβάσεως χρήση , προκειμένου η επιχείρηση να μην έχει ουδεμία επιβάρυνση.

20. Επίσης συμφωνείται ότι στο διάστημα έως την τελική μεταβίβαση του 34% της εταιρίας "Theros International Gaming Inc." προς τον Νικόλαο Μπαλαγιάννη από τον Κώστα Μαυράκη , ο Κώστας Μαυράκης θα ενεχυριάσει στον Νικόλαο Μπαλαγιάννη τις μετοχές της εταιρείας "Τρία Αστέρια" ως εγγύηση και θα του δώσει και ισόποση προσωπική του επιταγή .

21. Επίσης διά του παρόντος συμφωνείται ρητά ότι εάν ο Νικόλαος Μπαλαγιάννης αποκτήσει πέραν του 34% των μετοχών και το 12% των μετοχών του Mike Rose ήτοι συνολικά 46% τότε ο Κωνσταντίνος Μαυράκης δεσμεύεται ρητά και υποχρεούται να του μεταβιβάσει ακόμη ποσοστό από 3% των μετοχών της εταιρίας με το τίμημα ανά ποσοστιαία μονάδα του παρόντος προσυμφώνου , ώστε τελικά να έχει ο Κων/νος Μαυράκης το 51% και ο Νικόλαος Μπαλαγιάννης το 49 % των μετοχών της εταιρίας "Theros International Gaming Inc."

11

22. Διά του παρόντος συμφωνητικού συμφωνείται όπως ο Νικόλαος Μπαλαγιάννης έχει δικαίωμα υπαναχώρησης: α) εάν τα οικονομικά στοιχεία της εταιρείας THEROS INTERNATIONAL GAMING Inc κατόπιν οικονομικού ελέγχου, που θα διενεργηθεί από τον Νικόλαο Μπαλαγιάννη εντός 20 εργασίμων ημερών από την επομένη της υπογραφής του παρόντος προσυμφώνου, έχουν απόκλιση 5% από τα δηλωθέντα εκ μέρους του Κων/νου Μαυράκη και β) Εάν προκύψουν άλλες απαιτήσεις προς τρίτους οι οποίες δεν έχουν γνωστοποιηθεί στον αγοραστή και έχουν απόκλιση πάνω από το 5 % των δηλωθέντων.

23. Συμφωνείται ότι μετά την παρέλευση διμήνου από την υπογραφή του παρόντος και σε περίπτωση ακύρωσης της ανωτέρω συμφωνίας από οιονδήποτε εκ εδώ συμβαλλομένων χωρίς σπουδαίο λόγο θα υποχρεωθεί στην καταβολή 1.000.000 δολαρίων ΗΠΑ ως ποινική ρήτρα.

Το παρόν θα αποτελέσει την βάση του μέλλοντος να υπογραφεί οριστικού συμφωνητικού, μεταξύ των εδώ συμβαλλομένων ή εταιρείας επιλογής του Νικ.Μπαλαγιάννη με την δυνατότητα συμπληρώσεων ή προσθηκών κατόπιν ομοφωνίας.

24.Αρμόδια Δικαστήρια για οποιαδήποτε διαφορά προκύψει θα είναι τα Δικαστήρια της Αθήνας.

ΟΙ ΣΥΜΒΑΛΛΟΜΕΝΟΙ    Αθήνα ...9-6-2003

NICOLAS BALAGIANNIS

ΜΑΥΡΑΚΗΣ ΚΩΝ/ΝΟΣ